ANR PIPELINE COMPANY, et
al., Plaintiffs,

v.

The CORPORATION COMMISSION OF
OKLAHOMA, et al., Defendants.

NORTHWEST CENTRAL PIPELINE
CORPORATION, Plaintiff,

v.

The CORPORATION COMMISSION OF
OKLAHOMA, et al., Defendants.

Nos. CIV–85–1929–A, CIV–85–1980–A.

United States District Court,
W.D. Oklahoma.

Sept. 4, 1986.

William J. Legg, Andrews Davis Legg
Bixler Milsten & Murrah, Oklahoma City,
Okl., for ANR Pipeline Co., Colorado Inter-
state Gas Co., Columbia Gas Transmission
Corp., KN Energy, Inc., Mississippi River
Transmission Corp., Natural Gas Pipeline
Co. of America, Tennessee Gas Pipeline
Co., Western Gas Interstate Co.

James M. Gaitis, Oklahoma City, Okl.,
for El Paso Natural Gas Co.

Lindil C. Fowler, Jr., G. Gail Stricklin,
Asst. Gen. Counsel, Oklahoma Corp.
Com'n, Oklahoma City, Okl., for Corpora-
tion Com'n of the State of Okl., James B.
Townsend, Norma Eagleton and Hamp
Baker, Commissioners of the Corp. Com'n
of the State of Okl.

R. Wilson Montoy, II, Brunini, Gratham,
Grover & Hewes, Jackson, Miss., John L.
Arlington, Jr. and Curtis M. Long, Huff-
man, Arlington, Kihle, Gaberino & Dunn,
Tulsa, Okl., for Southern Natural Gas Co.

Donald L. Kahl, Kent L. Jones, Hall,
Estill, Hardwick, Gable, Collingsworth &
Nelson, Inc., Tulsa, Okl., for Northwest
Cent. Pipeline Corp.

## MEMORANDUM OPINION

ALLEY, District Judge.

This case is before the Court for consid-
eration of plaintiffs' Motions for Summary
Judgment. These actions seek a declara-
tion that OKLA. STAT. ANN. Tit. 52,
§ 240 (1981) ("Section 240"), and the or-
ders, rules and regulations promulgated
thereunder by the Corporation Commission
of the State of Oklahoma ("Commission"),
are unconstitutional as applied to interstate
pipeline purchasers. Plaintiffs allege that
these rules and regulations contravene Ar-
ticle VI, Clause 2 of the Constitution of the
United States, because they interfere with

the regulatory scheme established under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, and the Natural Gas Policy Act of 1978, 15 U.S.C. § 3301 *et seq.* Additionally, the plaintiffs seek to enjoin the Commission and the individual Commissioners from enforcing its Section 240 rules against the interstate pipeline companies.

Plaintiffs specifically attack Commission Rule 1–305 on grounds that the subject matter, as applied to them, is exclusively in the federal province. Rule 1–305 provides:

"RULE 1–305. PRIORITY SCHEDULE FOR SUPPLY AND DEMAND IMBALANCE.

(a) Any common purchaser as defined in 52 O.S. 1981, Section 240, shall purchase all the gas which may be offered for sale, and which may reasonably be reached by its trunk lines or gathering lines, without discrimination in favor of one producer as against another or in favor of any one source of supply as against another, except as authorized by the Commission under (b) below.

(b) In the interest of the prevention of waste and protection of correlative rights, the following priority schedule shall be implemented by any first purchaser of gas whenever the permitted production from all wells in any common source of supply in its system in this state, including gas which is processed, is in excess of that purchaser's reasonable market demand; provided, however, if the first purchaser does not contractually control wellhead production, then the first taker of gas shall be responsible for implementation of the following priority schedule.

(i) Priority One—Hardship and distress wells.

(ii) Priority Two—Enhanced recovery wells.

(iii) Priority Three—Wells producing casinghead gas and associated gas.

(iv) Priority Four—If after the first purchaser or first taker has taken the gas from Priorities One through Three above and still has further market demand in its system for gas, said purchaser or taker shall take ratably from all allocated, special allocated and unallocated common sources of supply which may be offered for sale, and which may reasonably be reached by its trunk lines or gathering lines, without discrimination in favor of one producer as against another or in favor of any one source of supply as against another.

(c) When permitted production of gas from all wells from which a purchaser or taker is requried to take exceeds the market demand of said purchaser or taker, all reductions in gas purchases or takes from wells in each Priority shall be ratable. All production from the lower priority wells shall be shut-in before production from any well in the next higher priority is curtailed.

(d) Any well which meets the definition of more than one priority shall be assigned the higher priority.

(e) When there is more than one purchaser or taker involved in the taking of gas from a well into any purchaser's system, all purchasers and takers within that system shall be responsible for compliance with this Rule.

(f) Upon a verified application of the Director of the Oil and Gas Conservation Division, or any other person, the Commission, after notice and hearing, may determine if gas has been ratably purchased or taken from a common source of supply on a systemwide basis in accordance with this rule without avoidable waste and with equitable participation in productions and markets by all operators and other interested parties.

(g) In any month wherein a purchaser or taker has a market demand/supply imbalance and must curtail purchases or takes in compliance with this Rule, Form 1004 B shall be filed by said purchaser or taker with the Oil and Gas Conservation Division.

(h) Any interested party may file an application requesting that the Commission, for good cause shown, authorize limited deviation from the general priori-

ty schedule provided under (b) above. The Commission on its own motion may initiate a review of the continued need for such a limited deviation. After notice and hearing, the Commission may authorize limited deviation upon finding that the same is necessary in order to prevent waste, protect correlative rights, or is otherwise required by the public interest or authorized by law."

When Rule 1–305 was promulgated, the Commission referred to Section 240 as its legal basis. Section 240 is a straightforward ratable take provision, which provides:

" 'Common purchaser'—Discrimination in purchases prohibited—Regulation of purchases

Every person, firm or corporation, now or hereafter engaged in the business of purchasing and selling natural gas in this state, shall be a common purchaser thereof, and shall purchase all of the natural gas which may be offered for sale, and which may reasonably be reached by its trunk lines, or gathering lines without discrimination in favor of one producer as against another, or in favor of any one source of supply as against another save as authorized by the Corporation Commission after due notice and hearing; but if any such person, firm or corporation, shall be unable to purchase all the gas so offered, then it shall purchase natural gas from each producer ratably. It shall be unlawful for any such common purchaser to discriminate between like grades and pressures of natural gas, or in favor of its own production, or of production in which it may be directly or indirectly interested, either in whole or in part, but for the purpose of prorating the natural gas to be marketed, such production shall be treated in like manner as that of any other producer or person, and shall be taken only in the ratable proportion that such production bears to the total production available for marketing. The Corporation Commission shall have authority to make regulations for the delivery, metering and equitable purchasing

and taking of all such gas and shall have authority to relieve any such common purchaser, after due notice and hearing, from the duty of purchasing gas of an inferior quality or grade."

Essentially the same controversy now before this Court has recently been examined twice by the United States Supreme Court. In *Northern Natural Gas Company v. State Corporation Commission*, 372 U.S. 84, 83 S.Ct. 646, 9 L.Ed.2d 601 (1963), the Court held unconstitutional on federal supremacy grounds the Kansas attempt to regulate the purchase of Kansas natural gas by interstate pipelines. As in *Northern Natural,* the defendants here assert that the state's police power interest in conservation of resources and consequent regulation of production obviate the kind of federal interest that would underlie a federal occupation of the field. At issue in *Northern Natural* were two orders of the Kansas State Corporation Commission, avowedly adopted as conservation measures. The Commission order of October 7, 1959 was superseded by Order number 82–2–219, which provides:

## "RATABLE PRODUCTION OF GAS FROM COMMON SOURCE OF SUPPLY

In each common source of supply under proration by this Commission, each purchaser shall take gas in proportion to the allowables from all the wells to which it is connected and shall maintain all such wells in substantially the same proportionate status as to overproduction or underproduction; provided, however, this rule shall not apply when a difference in proportionate status results from the inability of a well to produce proportionately with other wells connected to the purchaser (Authorized by G.S. 1959, Supp. 55–703; Effective February 8, 1960)."

Kansas statute Section 55–703 is:

"55–703. Production regulations; rules and formulas. Whenever the available production of natural gas from any common source of supply is in excess of

the market demands for such gas from such common source of supply, or whenever the market demands for natural gas from any common source of supply can be fulfilled only by the production of natural gas therefrom under conditions constituting waste as herein defined, or whenever the commission finds and determines that the orderly development of and production of natural gas from, any common source of supply requires the exercise of its jurisdiction, then any person, firm or corporation having the right to produce natural gas therefrom, may produce only such portion of all the natural gas that may be currently produced without waste and to satisfy the market demands, as will permit each developed lease to ultimately produce approximately the amount of gas underlying such developed lease and currently produce proportionately with other developed leases in said common source of supply without uncompensated cognizable drainage between separately-owned, developed leases or parts thereof.

The commission shall so regulate the taking of natural gas from any and all such common sources of supply within this state as to prevent the inequitable or unfair taking from such common source of supply by any person, firm or corporation and to prevent unreasonable discrimination of favor of any one common source of supply as against another in favor of or against any producer in any such common source of supply. In promulgating rules, regulations and formulas, to attain such results the commission shall give equitable consideration to acreage, pressure, open flow, porosity, permebility and thickness of pay, and such other factors, conditions and circumstances as may exist in the common source of supply under consideration at the time, as may be pertinent: *Provided, however,* That the daily takes of gas from any well in an unprorated gas pool shall not exceed twenty-five percent (25%) of its open flow: *Provided further, however,* That the provisions of this act shall not apply to any common source of

supply in which the average open flow of all the producing wells therein is not in excess of seven hundred fifty thousand (750,000) cubic feet per day.

The commission in determining the market demand for gas from a common source of supply shall consider the reasonable current requirements for current consumption and use within and without the state, and such other factors, conditions, or circumstances that would aid in establishing the market demand."

Thus the Kansas regulation fell notwithstanding its promulgation in furtherance of a *production* statute. The ostensible source for Oklahoma's Rule 1–305 was Section 240, a *purchase* statute. In its briefs here, the Commission cites its order of July 3, 1985 in which it propounded that Rule 1–305 was also a product of OKLA. STAT. ANN. Tit. 52 § 239 (1981), a *conservation* statute. This order came down a year and a half after the effective date of Rule 1–305. There is no need to inquire whether the July 1985 order's invocation of Section 239 is but an afterthought makeweight, because in any event it has no more efficacy in fending off a federal exclusive province than the Kansas statute examined by the Supreme Court in *Northern Natural.*

A similar result was reached in the recent *Transcontinental Gas Pipe Line Corporation v. State Oil and Gas Board of Mississippi and Coastal Exploration, et al.,* —— U.S. ——, 106 S.Ct. 709, 88 L.Ed.2d 732. In *Transco,* the Court examined Rule 48 of the Mississippi State Oil and Gas Board, a ratable-take requirement, which provides:

"Rule 48. *Ratable Take*

Each person now or hereafter engaged in the business of purchasing oil or gas from owners, operators, or producers shall purchase without discrimination in favor of one owner, operator, or producer against another in the same common source of supply."

A comparison of the two regulations found unconstitutional, Kansas Statute 55–703 and Mississippi's Rule 48, with Okla-

homa's Section 240 and Rule 1–305, compels a determination that all three devices are intended to and do result in regulation of the *taking* of gas. They seek to prevent discrimination in favor of any one common source of supply as against another. Such regulation allows an individual state to skew the free market for gas. The federal policy is to allow the gas market price to be determined by the free flow of commerce on a national scale among the separate states.

As discussed in *Transco,*

"[I]n light of Congress' intent to move toward a less-regulated national natural gas market, its decision to remove jurisdiction from FERC [Federal Energy Regulatory Commission] cannot be interpreted as an invitation to the States to impose additional regulations.

Mississippi's order also runs afoul of other concerns identified in *Northern Natural.* First, it disturbs the uniformity of the federal scheme, since interestate pipelines will be forced to comply with varied state regulations of their purchasing practices. In light of the NGPA's unification of the interstate and intrastate markets, the contention that Congress meant to permit the States to impose inconsistent regulations is especially unavailing. Second, Mississippi's order would have the effect of increasing the ultimate price to consumers." —— U.S. at ——, 106 S.Ct. at 724.

In the case at bar, the Commission has asserted that it is a constitutionally created body statutorily charged with the duties of regulating waste and protecting correlative rights. Further, the Commission asserts its regulation of natural gas takes by interstate pipelines is only incidental to the exercise of its jurisdiction over the regulation of the production of natural gas from a common source of supply. Through its applications of Sections 239 and 240 and regulations promulgated thereunder, the Commission urges, it is attempting to accommodate the interests of both the producer and the pipeline by adjusting the production of natural gas to demand. It

argues that Federal Energy Regulatory Commission ("FERC") does not regulate the production and gathering of gas that ultimately may be sold in interstate commerce, but rather has cognizance of the construction of interstate pipelines, sales for resale and the terms and conditions of transportation of natural gas by interstate pipelines.

The Commission urges that with regard to the "first sales" of natural gas, the only area over which FERC may exercise its control is to set maximum lawful price ceilings, citing *Public Service Commission of the State of New York v. Mid-Louisiana Gas Company,* 463 U.S. 319, 334, 103 S.Ct. 3024, 3033, 77 L.Ed.2d 668 (1983); and thus, as the Commission's questioned activities are directed toward production and the first purchaser, whether it be pipeline, gathering system, or independent marketer, such activities constitute permissible acts under the law.

The Court finds that OKLA. STAT. ANN. Tit. 52 § 240 (1981) and Rule 1–305 of the Oklahoma Corporation Commission are unconstitutional as applied to plaintiffs.

There are two bases for the decision in *Northern Natural.* The first, that the states may not impose inconsistent requirements, clearly applies here.

Further, despite the values of recognition of correlative rights and conservation, the Oklahoma statute and the Commission's Rule, as did the action of the State Oil and Gas Board of Mississippi in *Transco,* " ... directly undermines Congress' determination that the supply, the demand, and the price of high-cost gas be determined by market forces." *Transco, supra.*

The subject matter has been pre-empted by federal law, which, as Justice Rehnquist observed in footnote 3 of his dissent, can occur either through an actual conflict of federal law or a congressional intent to occupy a given field.

*Transco* tells us in so many words that this is a subject matter in which Congress

**424**

has determined a national policy, before which Oklahoma law must bow.

IT IS THEREFORE ORDERED, ADJUGED AND DECREED that:

1. OKLA. STAT. ANN. Tit. 52, § 240 (1981) and Rule 1–305 of the Oklahoma Corporation Commission are declared unconstitutional as applied to the plaintiffs, intervenors and all other interstate pipeline companies, in that such statute and rule are in contravention of Article VI, Clause 2 of the Constitution of the United States of America as such regulation of interstate pipeline company by the State of Oklahoma interferes with and is pre-empted by the federal regulatory scheme established by the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, and the Natural Gas Policy Act of 1978, 15 U.S.C. § 3301 *et seq.*

2. Because OKLA. STAT. ANN. Tit. 52, § 240 (1981) and Rule 1–305 are violative of the United States Constitution, defendants, The Corporation Commission of The State of Oklahoma, James B. Townsend, Norma Eagleton and Hamp Baker, Commissioners of the Corporation Commission of the State of Oklahoma, and all persons acting under, in concert with, for, or on behalf of, the defendants, are permanently enjoined from engaging in, committing or performing or causing to be done, directly or indirectly, any acts which implement, enforce or attempt to implement or enforce the provisions of OKLA. STAT. ANN. Tit. 52, § 240 (1981) or Rule 1–305 as against the plaintiffs, the intervenors or any other interstate pipeline company.

3. The declaratory judgment entered pursuant to paragraph 1 and the permanent injunction entered pursuant to paragraph 2 of this Order shall constitute a final judgment pursuant to Rule 54 of the Federal Rules of Civil Procedure, and the Clerk of the Court is directed to enter the same in the judgment docket pursuant to Rules 58 and 79(a) of the Federal Rules of Civil Procedure.

4. Each of the parties shall bear their own costs and attorneys fees.