860 F.2d 1571
 57 USLW 2315
 ANR PIPELINE COMPANY; Colorado Interstate Gas Company;
Columbia Gas Transmission Corp.; KN Energy, Inc.;
Mississippi River Transmission Corp.; Natural Gas Pipeline
Company of America; Tennessee Gas Pipeline Co., Plaintiffs-Appellees,
Williams Natural Gas Company, Plaintiff-Appellee,
El Paso Natural Gas Company, Plaintiff-Intervenor-Appellee,
Western Gas Interstate Company, Plaintiff,
v.
The CORPORATION COMMISSION OF the STATE OF OKLAHOMA,
Defendant-Appellant,
Southern Natural Gas Company, Defendant-Appellee and
Defendant- Intervenor- Appellant,
James B. Townsend, Norma Eagleton, and Hamp Baker,
Commissioners of the Corporation Commission of the
State of Oklahoma, Defendants.
 No. 86-2481.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 9, 1988.
 
 S. Paul Hammons (William J. Legg, with him on the brief) of Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, Okl., for plaintiffs-appellees, ANR Pipeline Co., et al.
 Kent L. Jones and Donald L. Kahl of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Okl., on the brief for plaintiff-appellee, Williams Natural Gas Co.
 R. Thomas Seymour (Caralinn W. Cole, Tulsa, Okl., Donald J. MacIver, Jr., Eldon J. Mitrisin, Barry Schneiderwind, Thomas S. Jensen, El Paso, Tex., James M. Gaitis, Reserve, N.M., with him on the brief), Tulsa, Okl., for plaintiff-intervenor-appellee.
 Patricia A. Watts (Lindil C. Fowler, Jr., Gen. Counsel, Gretchen P. Hoover, Deputy Gen. Counsel, on the briefs), Asst. Gen. Counsel, Oklahoma Corp. Com'n., Oklahoma City, Okl., for defendant-appellant.
 John M. Grower (R. Wilson Montjoy II of Brunini, Grantham, Grower & Hewes, Jackson, Miss., John L. Arrington, Jr. and David E. Crawford of Huffman, Arrington, Kihle, Gaberino & Dunn, Tulsa, Okl., and, Joseph H. Moss, Jr. and John C. Griffin of Southern Natural Gas Co., Birmingham, Ala., with him on the briefs) of Brunini, Grantham, Grower & Hewes, Jackson, Miss., for defendant-appellee and defendant-intervenor-appellant.
 Frederick Moring and David H. Soloman of Crowell & Moring, Washington, D.C., filed an amicus curiae brief for Associated Gas Distributors.
 Hugh D. Rice and Robert J. Campbell, Jr., of Rainey, Ross, Rice & Binns, and Robert D. Stewart, Jr., Oklahoma Gas & Elec. Co., Oklahoma City, Okl., filed an amicus curiae brief for Oklahoma Gas & Elec. Co.
 W. Bland Williamson of Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Okl., Oklahoma Independent Petroleum Ass'n filed an amicus curiae brief for defendant-appellant.
 Before MOORE, BARRETT, and BRORBY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 The plaintiffs in the district court, several interstate natural gas pipelines (Pipelines), are engaged in the business of purchasing, transporting, and reselling natural gas across state lines. They commenced this action against the defendant Corporation Commission of the State of Oklahoma and its individual members, asking for a declaratory judgment holding that federal law pre-empted Oklahoma's ratable take statute and implementing regulation. They also sought injunctive relief, requesting the court restrain the Commission from attempting to implement or enforce the pre-empted statute and regulation. The district court permitted defendant Southern Natural Gas Company, also an interstate pipeline company, to intervene in order to support the constitutionality of the Oklahoma enactments at issue. Both defendants will be referred to jointly as the Commission.
 
 
 2
 The district court granted the Pipelines' motion for summary judgment, holding Oklahoma's ratable take statute, Okla.Stat.Ann. tit. 52, Sec. 240 (1981), and the implementing rule, Rule 1-305 of the Oklahoma Corporation Commission, to be in contravention of the Supremacy Clause in Art. VI, Cl. 2 of the United States Constitution for the reason that Oklahoma's regulation of interstate pipeline companies interferes with and is pre-empted by the federal regulatory scheme established by the Natural Gas Act, 15 U.S.C. Secs. 717-717w (1976), and the Natural Gas Policy Act of 1978, 15 U.S.C. Secs. 3301-3432 (1982). The district court also permanently enjoined the Commission from attempting to implement or enforce the provisions of the statute and rule against the Pipelines or any other interstate pipeline company. The decision of the district court is reported as ANR Pipeline Co. v. Corporation Comm'n of Okla., 643 F.Supp. 419 (W.D.Okl.1986).
 
 
 3
 The Commission generally asserts the district court lacked jurisdiction and the pre-emption analysis of the district court was incorrect. For the reasons set forth in this opinion, we AFFIRM the decision of the district court.
 
 I. BACKGROUND
 
 4
 Oklahoma, in 1915, enacted Okla.Stat.Ann. tit. 52, Sec. 240 (1981),[1] which provided that every person engaged in the business of processing and selling natural gas must purchase all of the natural gas offered for sale from a common reservoir, and if unable to purchase all of such gas, then the common purchaser must purchase natural gas from each seller ratably. This statute also gave to the Oklahoma Corporation Commission the authority to make regulations for the equitable purchasing and taking of such natural gas. Oklahoma also enacted Okla.Stat.Ann. tit. 52, Sec. 239 (1981),[2] which provides when full production of natural gas exceeds market demand, the producers of natural gas may take only their proportionate share of the natural flow of the gas. The Commission is given authority to regulate the production of natural gas.
 
 
 5
 In 1983, the Oklahoma Corporation Commission adopted its Rule 1-305[3] which established a priority schedule mandating the order in which various categories of natural gas are to be purchased when the supply of natural gas exceeds the demand.
 
 
 6
 In 1985, as a result of numerous filings pursuant to Sec. 240 and Rule 1-305, the Commission held several hearings and issued its order No. 281285 wherein it determined the regulation of interstate pipelines to be an incident of the exercise of the Commission's jurisdiction that is necessary to protect correlative rights and prevent waste. The Commission found Secs. 239 and 240 of Oklahoma law attempt to adjust production of natural gas to demand in order to protect against drainage. It further held its regulatory jurisdiction does not encroach upon the jurisdiction of the Federal Energy Regulatory Commission (FERC), under either the Natural Gas Act or the Natural Gas Policy Act of 1978, because FERC is not vested with jurisdiction over the production and gathering of gas and concluded "[i]n light of the present regulatory atmosphere" the Commission's jurisdiction can co-exist and complement that of FERC.
 
 II. SUBJECT MATTER JURISDICTION
 
 7
 We must first determine whether or not the district court had jurisdiction to decide this controversy. In their complaint, the Pipelines asserted jurisdiction based upon a federal question, 28 U.S.C. Sec. 1331. A federal district court is given "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. Sec. 1331 (Supp.1988).
 
 
 8
 The Commission asserts that the district court lacked subject matter jurisdiction because the Pipelines' claim for declaratory judgment fails to raise a federal question. They contend the present controversy falls within the category of cases best illustrated by Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), where the Supreme Court expressed, by way of dicta, that a declaratory judgment plaintiff who asserts the constitutional invalidity of a state action has only a defense that probably does not provide a basis for invoking federal question jurisdiction. Id. at 248, 73 S.Ct. at 242. Stated differently, the anticipation of a possible defense to state action cannot serve as a basis for federal question jurisdiction.
 
 
 9
 The cases upon which the Commission relies to assert the district court is without federal question jurisdiction involve an action for declaratory judgment that is not coupled with a request for injunctive relief. See e.g., Madsen v. Prudential Fed. Sav. & Loan Ass'n, 635 F.2d 797 (10th Cir.1980),cert. denied 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981); Monks v. Hetherington, 573 F.2d 1164 (10th Cir.1978). These cases stem directly from the dicta in Wycoff. A helpful discussion of the problems presented by Wycoff may be found at 10A C. Wright, A. Miller & K. Kane, Federal Practice & Procedure Sec. 2767 (1983 & Pocket Part 1988). We express no opinion concerning the dicta in Wycoff and its progeny, because this suit is not based solely on a claim for declaratory judgment but also includes a claim for injunction.
 
 
 10
 The existence of federal question jurisdiction must appear on the face of the plaintiff's well pleaded complaint. Phillips Petroleum Co. v. Texaco Inc., 415 U.S. 125, 127-28, 94 S.Ct. 1002, 1003-04, 39 L.Ed.2d 209 (1974); Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908); 1 J. Moore, J. Lucas, H. Fink, D. Weckstein, & J. Wicker, Moore's Federal Practice p 0.62[2.-2] (1988). The Pipelines' complaint clearly and concisely alleges that plaintiffs are interstate gas pipelines as defined by the Natural Gas Policy Act of 1978, and, as such, are subject to regulation by FERC; that each of the plaintiffs is a "natural gas company" within the meaning of the Natural Gas Act and are therefore regulated by FERC; that that Oklahoma statute and administrative order in question are invalid under the United States Constitution as they conflict with and are pre-empted by federal statutes, the Natural Gas Act and the Natural Gas Policy Act of 1978; and, that plaintiffs seek to enjoin state action, under the statute and rule, which interferes with the interstate pipelines' purchase of natural gas.
 
 
 11
 Federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. In the case of Shaw v. Delta Airlines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court stated:
 
 
 12
 It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. Sec. 1331 to resolve. This Court, of course, frequently has resolved preemption disputes in a similar jurisdictional posture.
 
 
 13
 Id. at 96 n. 14, 103 S.Ct. at 2899 n. 14 (citations omitted). Adopting the reasoning of Shaw, we hold that the district court had federal question jurisdiction under 28 U.S.C. Sec. 1331 to enjoin the Commission's enforcement of Sec. 240 and Rule 1-305 on the ground that this state law is pre-empted by the Natural Gas Act and the Natural Gas Policy Act. The district court's jurisdiction to resolve the Pipelines' claim for injunction extends to enable the court also to resolve the issues raised by the declaratory judgment action. Sterling v. Constantin, 287 U.S. 378, 393-94, 53 S.Ct. 190, 193-94, 77 L.Ed. 375 (1932).
 
 
 14
 The Fifth Circuit has decided a case which involves issues and arguments similar to those now before the court, and has reached the same result as we do here. In Braniff Int'l, Inc. v. Florida Pub. Serv. Comm'n, 576 F.2d 1100 (5th Cir.1978), decided prior to and without the benefit of Shaw, six air carriers filed suit for declaratory and injunctive relief, challenging the constitutionality of the state statutory scheme regulating the schedules of interstate air carriers as violative of the Supremacy Clause. The court thoroughly analyzed Wycoff and its progeny, and held the federal district court could exercise subject matter jurisdiction based upon the existence of a federal question concerning the claims of the airlines. The court specifically held that where a party seeks injunctive and declaratory relief based upon the unconstitutionality of a state statute, and where there are no other concrete impediments to a proper exercise of federal question jurisdiction, the mere fact that constitutional claims might be raised before a state administrative body charged with enforcement of the statute does not alone deprive the court of jurisdiction. Braniff, 576 F.2d at 1106.
 
 
 15
 Our decision affirming the district court's jurisdiction is also supported by many decisions of the Supreme Court which have found federal question jurisdiction where the plaintiff claims pre-emption, and seeks to enjoin enforcement of the state law. See, e.g., Shaw, 463 U.S. 85, 103 S.Ct. 2890; Ray v. Atlantic Richfield Co., 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); Jones v. Rath Packing Co., 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); Sterling, 287 U.S. at 393, 53 S.Ct. at 193; Ex parte Young, 209 U.S. 123, 160-62, 28 S.Ct. 441, 454-55, 52 L.Ed. 714 (1908).
 
 
 16
 The Pipelines also allege jurisdiction based upon diversity under 28 U.S.C. Sec. 1332. The Commission asserts there is no monetary amount in controversy. Our holding that jurisdiction exists under 28 U.S.C. Sec. 1331 makes it unnecessary for us to decide this issue, as federal question jurisdiction arising under Sec. 1331 is not dependent upon the amount in controversy. Federal Question Jurisdictional Amendments Act of 1980, Pub.L. 96-486, Sec. 2(a), 94 Stat. 2369.
 
 
 17
 We therefore conclude the federal district court properly exercised jurisdiction over the Pipelines' claims for injunction and declaratory judgment under 28 U.S.C. Sec. 1331.
 
 III. ACTUAL CONTROVERSY
 
 18
 The Commission contends that the action below presents no actual controversy entitling the Pipelines to maintain an action under the Declaratory Judgment Act, 28 U.S.C. Secs. 2201, 2202 (1982). It further argues that order No. 281285 only determined the Commission's jurisdiction over interstate pipelines but did not order any action directly affecting the interstate pipelines. The Commission asserts that because it has taken no formalized action directly affecting the interstate pipelines, the Pipelines are merely attempting to secure an advisory opinion.
 
 
 19
 The Commission relies upon Wycoff, 344 U.S. 237, 73 S.Ct. 236, and Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1948), for the proposition that the district court should not have decided the issues in this action until the Commission entered orders specifically affecting these Pipelines. In both Wycoff and Eccles, there was no proof that plaintiffs were threatened with regulation. In the instant case, the Commission has issued its regulation and, in an adversarial setting, has ruled that it has jurisdiction to enforce its regulation against these interstate pipeline purchasers. Various producers within the State of Oklahoma have filed their requests asking the Commission to enforce its regulations concerning ratable taking by the interstate pipeline companies. In our view, Wycoff and Eccles are distinguishable from this case.
 
 
 20
 Under the Declaratory Judgment Act, a court may declare the rights of a party "in a case of actual controversy." 28 U.S.C. Sec. 2201. In Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937), the Supreme Court held the required controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests, and it must be a real and substantial controversy admitting a specific relief through a conclusive decree, as distinguished from an opinion advising what the law would be upon a hypothetical statement of the facts. This general rule must be applied on a case-by-case basis. Basically, the question in each case is whether the facts alleged, under all the circumstances, show there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).
 
 
 21
 In the instant case, the Pipelines are attacking the regulation issued by the Commission prior to enforcement. The Pipelines claim Rule 1-305 gives an authoritative interpretation of Okla.Stat. tit. 52, Sec. 240, which will have a direct effect on the day-to-day business of all interstate pipeline companies doing business in the State of Oklahoma. The Commission has further ruled, in its order No. 281285, that it has jurisdiction over the interstate gas pipelines to enforce Sec. 240 and Rule 1-305. Section 240 and Rule 1-305 require an immediate and significant change in the Pipelines' conduct of their purchase practices. They will no longer be free to purchase gas from whom they wish, rather they must purchase gas from those persons specified by the State of Oklahoma. If they fail to comply, they may be subject to a $5,000 per day fine. Okla.Stat. tit. 52, Sec. 102. The interstate pipeline companies thus face a dilemma. They must either comply at significant expense, or they may risk penalties.
 
 
 22
 The case of Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), presents facts and issues that parallel the instant case. In Abbott, the commissioner of food and drugs issued regulations concerning the labeling of drugs. Various drug manufacturers challenged the regulations prior to enforcement. The court of appeals held that no actual case or controversy existed. The Supreme Court held there was an actual case or controversy and stated: "These regulations purport to give an authoritative interpretation of a statutory provision that has a direct effect on the day-to-day business of all prescription drug companies; its promulgation puts petitioners in a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." Id. at 152, 87 S.Ct. at 1517. For a similar case, see Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).
 
 
 23
 In the case before us, the Commission ruled that it has jurisdiction to require the Pipelines to purchase gas from suppliers other than those with whom the Pipelines have contracts. This will have an immediate and direct effect on the day-to-day business of all interstate pipeline companies doing business in the State of Oklahoma. This ruling also has the real possibility of generating lawsuits between the Pipelines and their existing suppliers, and raises the likelihood of the Pipelines being subject to conflicting directives from both FERC and the State of Oklahoma. The fact that plaintiffs face the threat of irreparable harm from enforcement of the unconstitutional state statute and regulation quite clearly satisfies the "actual controversy" requirement.
 
 
 24
 According to the evidence presented to the district court at the time of the application for preliminary injunction, the enforcement could adversely increase the Pipelines' "take or pay" liability by many millions of dollars. Parties need not subject themselves to a multiplicity of suits or litigation or await the imposition of penalties under an unconstitutional enactment in order to assert their constitutional claim for an injunction in federal court. Young, 209 U.S. at 160, 28 S.Ct. at 454. Once the gun has been cocked and aimed and the finger is on the trigger, it is not necessary to wait until the bullet strikes to invoke the Declaratory Judgment Act.
 
 
 25
 We therefore hold, under the facts of this case, that there is a substantial controversy between parties having adverse legal interests which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
 
 
 26
 The Commission also asserts the Pipelines lack standing to bring this action because the Pipelines have not suffered an "actual injury." Standing has evolved as a doctrine of constitutional limitation of the federal judicial power found in the "case or controversy" language of Art. III, Sec. 2 of the United States Constitution. Standing may be raised at any time in the judicial process. Juidice v. Vail, 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977); Citizens Concerned for Separation of Church and State v. City & County of Denver, 628 F.2d 1289, 1297 (10th Cir.1980), cert. denied 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981).
 
 
 27
 Standing problems are currently analyzed by the Supreme Court in two inquiries: (a) whether the plaintiff alleges that the challenged action has caused him injury in fact (economic or otherwise), and (b) whether the interest sought to be protected by the plaintiff is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. Association of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 152-53, 90 S.Ct. 827, 829-30, 25 L.Ed.2d 184 (1970); Citizens Concerned, 628 F.2d at 1295.
 
 
 28
 The Pipelines alleged compliance with Sec. 240 and Rule 1-305 will increase the price of natural gas, impair contractual obligations, and disrupt utilization of pipeline facilities. "Injury in fact" may be shown by out-of-pocket costs to a business resulting from obedience to a new governmental rule. Hunt v. Washington State Apple Advertising Comm'r, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); Mountain States Legal Found. v. Costle, 630 F.2d 754, 764 (10th Cir.1980), cert. denied 450 U.S. 1050, 101 S.Ct. 1770, 68 L.Ed.2d 246 (1981). The Pipelines also allege they purchase natural gas in Oklahoma, and Sec. 240 applies to purchasers of natural gas. The Pipelines are subject to the comprehensive rules and regulations of the Federal Energy Regulatory Commission acting under the Natural Gas Act and the Natural Gas Policy Act. They assert their obligations under the state rules will conflict with the federal laws. These allegations are sufficient to particularize the injury to these plaintiffs and to indicate their claims come within the zone of interest protected by the Supremacy Clause.
 
 
 29
 We hold the Pipelines have standing to bring this action.
 
 IV. ABSTENTION
 
 30
 The Commission asserts that even if the district court had jurisdiction, it should have abstained from deciding this case, citing Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Burford was a diversity suit against the Texas Railroad Commission in which plaintiff sought to enjoin the commission from permitting the drilling and operation of certain oil wells in the East Texas Oil Field. The order under attack involved Texas' regulatory scheme for the conservation of oil and gas within that state. The Supreme Court held the district court erred in exercising federal jurisdiction to review such decisions made by the Texas Railroad Commission.
 
 
 31
 Burford is clearly distinguishable from the present case. In Burford, specialized knowledge pertaining to reservoir technology was required. Here, the Commission has presented no facts which would require specialized knowledge to understand. In Burford, the federal court was asked to apply and interpret Texas law. Here, we are applying the law arising under the United States Constitution and Congressional enactments. Moreover, the Pipelines claim Oklahoma lacks jurisdiction to regulate the purchase of natural gas because of federal pre-emption, a claim not raised in Burford.
 
 
 32
 The general law concerning abstention has been enunciated by the Supreme Court. In Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983), the Supreme Court, quoting from Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), stated:
 
 
 33
 "Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.' "
 
 
 34
 Abstention from the exercise of federal jurisdiction is the exception, not the rule, and should not be invoked lightly. In Colorado River, the circumstances that are appropriate for abstention have been grouped into three categories: (1) cases presenting a federal constitutional issue that might be mooted or presented in a different posture by state court determination of pertinent state law; (2) cases presenting difficult questions of state law bearing on policy problems of substantial political import whose importance transcends the result in the case then at bar; and, (3) cases where (absent bad faith, harassment or a patently invalid state statute) federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings. Id. at 814-16, 96 S.Ct. at 1244-46. None of these circumstances is present in this case.
 
 
 35
 There is no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy. Zablocki v. Redhail, 434 U.S. 374, 379-80 n. 5, 98 S.Ct. 673, 677-78 n. 5, 54 L.Ed.2d 618 (1978). To hold otherwise would mean that a federal court could never declare a state statute unconstitutional. Wynn v. Carey, 582 F.2d 1375, 1383 (7th Cir.1978).
 
 
 36
 We hold the district court was correct in refusing to abstain from exercising jurisdiction.
 
 V. PRE-EMPTION
 
 37
 Relying on Northern Natural Gas Co. v. State Corp. Comm'n of Kan., 372 U.S. 84, 83 S.Ct. 646, 9 L.Ed.2d 601 (1963), and Transcontinental Gas Pipe Line Corp. v. State Oil & Gas Bd. of Miss., 474 U.S. 409, 106 S.Ct. 709, 88 L.Ed.2d 732 (1986), the federal district court ruled as a matter of law that Okla.Stat. tit. 52, Sec. 240 and Rule 1-305 of the Oklahoma Corporation Commission interfere with and are pre-empted by the federal regulatory scheme established by the Natural Gas Act and the Natural Gas Policy Act. The Commission asserts Oklahoma's regulatory scheme is distinguishable from the regulations of Kansas and Mississippi that were held pre-empted in Northern and Transcontinental.
 
 
 38
 The issue to be decided by this court is whether a state statute and regulation requiring an interstate pipeline company to purchase natural gas from all the producers of a natural gas reservoir or field have been pre-empted by federal legislation.
 
 
 39
 State law can be pre-empted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted. If Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law; that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purpose and objectives of Congress. Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1983).
 
 
 40
 The federal laws which the district court found pre-empted the Oklahoma law and regulation are concisely described in Transcontinental, 474 U.S. at 420-21, 106 S.Ct. at 715-16:
 
 
 41
 Under the [Natural Gas Act], the Federal Power Commission's comprehensive regulatory scheme involved "utility-type ratemaking" control over prices and supplies.... "[I]n the early 1970's, it became apparent that the regulatory structure was not working."
 
 
 42
 * * *
 
 
 43
 * * *
 
 
 44
 In response, Congress enacted the [Natural Gas Policy Act], which "has been justly described as 'a comprehensive statute to govern future natural gas regulation.' " ... The aim of federal regulation remains to assure adequate supplies of natural gas at fair prices, but the [Natural Gas Policy Act] reflects a congressional belief that a new system of natural gas pricing was needed to balance supply and demand. The new federal role is to "overse[e] a national market price regulatory scheme."
 
 
 45
 (Citations omitted.) The Supreme Court concluded that Congress' determination that the supply, the demand, and the price of high cost gas are to be determined by market forces excluded state regulation of these areas.
 
 
 46
 Next, we must examine the Oklahoma statute and its attendant regulation. In its most simple form, Sec. 240 requires every purchaser of natural gas to purchase all of the natural gas offered for sale from a common reservoir (without discrimination in favor of one producer as against another, or in favor of one source of supply as against another), and, if the purchaser is unable to do so, then it must purchase natural gas from each producer ratably. Rule 1-305 establishes a priority schedule requiring a purchaser to buy gas from various categories of producing wells in priority order when the supply exceeds the demand.
 
 
 47
 A reading of Sec. 240 and Rule 1-305 reveals they are intended to and do result in regulation of the purchase of natural gas by interstate pipeline companies. They prevent discrimination in favor of one producer as against another and in favor of one source of supply against another. The Commission's control over the priority of gas purchases interferes with FERC's responsibility in regulating natural gas to allow market forces to provide an adequate supply at fair prices. The district court found that Sec. 240, and Rule 1-305 allow Oklahoma to skew the free market for natural gas, which is in direct conflict with the federal statutory policy of allowing the price of natural gas to be determined by the market. We agree.
 
 
 48
 A case of remarkable similarities is Northern. In that case, Kansas required an interstate pipeline company to purchase gas ratably. The Kansas statute empowered the State Commission to "regulate the taking of natural gas from any and all ... common sources of supply" to prevent the inequitable or unfair taking. Id. 372 U.S. at 88, 83 S.Ct. at 648. The rationale behind the state statute and the subsequent regulation was to effect ratable production and protect correlative rights. An interstate pipeline company challenged the orders claiming they unconstitutionally invaded the exclusive jurisdiction of the Federal Power Commission under the Natural Gas Act. The Supreme Court agreed, stating:
 
 
 49
 The federal regulatory scheme leaves no room either for direct state regulation of the prices of interstate wholesales of natural gas or for state regulations which would indirectly achieve the same result. These state orders necessarily deal with matters which directly affect the ability of the Federal Power Commission to regulate comprehensively and effectively the transportation and sale of natural gas, and to achieve the uniformity of regulation which was an objective of the Natural Gas Act. They therefore invalidly invade the federal agency's exclusive domain.
 
 
 50
 Id. at 91-92, 83 S.Ct. at 650-651 (footnote and citation omitted).
 
 
 51
 In Transcontinental, Mississippi required an interstate pipeline company to purchase gas from all parties owning interests in a common gas pool. Mississippi argued that the Natural Gas Policy Act of 1978 effectively nullified Northern by vesting regulatory power in the states over the wellhead sales of gas. The Supreme Court concluded that the Mississippi Gas Board's order was pre-empted by the Natural Gas Act and the Natural Gas Policy Act of 1978. In so holding, the Supreme Court analyzed the case under the same standard used in Northern and decided that, by enacting the Natural Gas Policy Act of 1978, Congress did not give to the states any broader powers over natural gas.
 
 
 52
 The district court determined that Northern and Transcontinental controlled the outcome below. We do not find Oklahoma's regulatory scheme to be distinguishable from the preempted regulations discussed in Northern and Transcontinental. We agree that all state regulation of the purchasing or taking of natural gas by interstate pipeline companies has been pre-empted by the federal regulations contained in the Natural Gas Act and the Natural Gas Policy Act of 1978. Under the Silkwood standards for pre-emption, these two acts evidence Congress' intent to occupy the entire field of regulating natural gas purchases by interstate pipeline companies.
 
 
 53
 The Commission now argues the district court misapplied Northern and Transcontinental. It suggests Congress has not pre-empted state regulation of conservation as the statutes in question clearly do not give to FERC any powers concerning these matters. The Commission contends this case does not involve state regulation of interstate natural gas sales and transportation but rather the state's inherent power to conserve its natural resources, protect correlative rights, and prevent waste. These arguments have no merit. The same arguments were raised in Northern. Kansas contended that ratable taking was essential for the conservation of natural gas and the protection of correlative rights, and that conservation is traditionally a function of state power. In Northern, the Supreme Court dealt with this issue by saying the problem is not as to the existence or even the scope of a state's power to conserve its natural resources, rather it is a question of whether the Constitution sanctions the particular means chosen by Kansas to exercise the conceded powers if those means threaten effectuation of the federal regulatory scheme. Id. at 93, 83 S.Ct. at 651. The Court concluded the state's interest in conservation of natural gas does not warrant its direct interference with the purchase of natural gas. We conclude Oklahoma's ratable-take statute (Sec. 240) and Rule 1-305 are not permissible conservation measures, because they interfere with federal regulation of the purchase of natural gas. Even though the federal regulations do not address conservation, Sec. 240 and Rule 1-305 are pre-empted because they create an obstacle to full compliance with the objectives of the federal regulation. Silkwood, 464 U.S. at 248, 104 S.Ct. at 621.
 
 
 54
 The Commission also asserts that Rule 1-305 constitutes regulation of production and was adopted, at least in part, pursuant to Okla.Stat.Ann. tit. 52, Sec. 239 (1981). The Commission argues that if the states have the power to regulate and limit production, then they can also limit purchases to existing market demand under Oklahoma's comprehensive approach. This argument is without merit. The language of Rule 1-305 does not support this argument. Section 239, by its own words, is directed to producers of natural gas. Section 240 on the other hand is directed to "common purchasers" of natural gas. Rule 1-305 is directed only to "common purchasers." It cannot be said that Rule 1-305 is merely regulating production.[4]
 
 
 55
 Under either analysis as set forth in Silkwood, the Oklahoma statute Sec. 240, and administrative Rule 1-305 have been pre-empted and therefore can not be enforced.
 
 
 56
 The decision of the district court is AFFIRMED.
 
 
 
 [1]
 Section 240 states:
 Every person, firm or corporation, now or hereafter engaged in the business of purchasing and selling natural gas in this state, shall be a common purchaser thereof, and shall purchase all of the natural gas which may be offered for sale, and which may reasonably be reached by its trunk lines, or gathering lines without discrimination in favor of one producer as against another, or in favor of any one source of supply as against another save as authorized by the Corporation Commission after due notice and hearing; but if any such person, firm or corporation, shall be unable to purchase all the gas so offered, then it shall purchase natural gas from each producer ratably. It shall be unlawful for any such common purchaser to discriminate between like grades and pressures of natural gas, or in favor of its own production, or of production in which it may be directly or indirectly interested, either in whole or in part, but for the purpose of prorating the natural gas to be marketed, such production shall be treated in like manner as that of any other producer or person, and shall be taken only in the ratable proportion that such production bears to the total production available for marketing. The Corporation Commission shall have authority to make regulations for the delivery, metering and equitable purchasing and taking of all such gas and shall have authority to relieve any such common purchaser, after due notice and hearing, from the duty of purchasing gas of an inferior quality or grade.
 
 
 [2]
 Section 239 states:
 Whenever the full production from any common source of supply of natural gas in this state is in excess of the market demands, then any person, firm or corporation, having the right to drill into and produce gas from any such common source of supply, may take therefrom only such proportion of the natural gas that may be marketed without waste, as the natural flow of the well or wells owned or controlled by any such person, firm or corporation bears to the total natural flow of such common source of supply having due regard to the acreage drained by each well, so as to prevent any such person, firm or corporation securing any unfair proportion of the gas therefrom; provided, that the Corporation Commission may by proper order, permit the taking of a greater amount whenever it shall deem such taking reasonable or equitable. The said commission is authorized and directed to prescribe rules and regulations for the determination of the natural flow of any such well or wells, and to regulate the taking of natural gas from any or all such common sources of supply within the state, so as to prevent waste, protect the interests of the public, and of all those having a right to produce therefrom, and to prevent unreasonable discrimination in favor of any one such common source of supply as against another.
 
 
 [3]
 Rule 1-305 states:
 (a) Any common purchaser as defined in 52 O.S.1981, Section 240, shall purchase all the gas which may be offered for sale, and which may reasonably be reached by its trunk lines or gathering lines, without discrimination in favor of one producer as against another or in favor of any one source of supply as against another, except as authorized by the Commission under (b) below.
 (b) In the interest of the prevention of waste and protection of correlative rights, the following priority schedule shall be implemented by any first purchaser of gas whenever the permitted production from all wells in any common source of supply in its system in this state, including gas which is processed, is in excess of that purchaser's reasonable market demand; provided, however, if the first purchaser does not contractually control wellhead production, then the first taker of gas shall be responsible for implementation of the following priority schedule.
 (i) Priority One--Hardship and distressed wells.
 (ii) Priority Two--Enhanced recovery wells.
 (iii) Priority Three--Wells producing casinghead gas and associated gas.
 (iv) Priority Four--If after the first purchaser or first taker has taken the gas from Priorities One through Three above and still has further market demand in its system for gas, said purchaser or taker shall take ratably from all allocated, special allocated and unallocated common sources of supply which may be offered for sale, and which may reasonably be reached by its trunk lines or gathering lines, without discrimination in favor of one producer as against another or in favor of any one source of supply as against another.
 (c) When permitted production of gas from all wells from which a purchaser or taker is required to take exceeds the market demand of said purchaser or taker, all reductions in gas purchases or takes from wells in each Priority shall be ratable. All production from the lower priority wells shall be shut-in before production from any well in the next higher priority is curtailed.
 (d) Any well which meets the definition of more than one priority shall be assigned the higher priority.
 (e) When there is more than one purchaser or taker involved in the taking of gas from a well into any purchaser's system, all purchasers and takers within that system shall be responsible for compliance with this Rule.
 (f) Upon a verified application of the Director of the Oil and Gas Conservation Division, or any other person, the Commission, after notice and hearing, may determine if gas has been ratably purchased or taken from a common source of supply on a systemwide basis in accordance with this rule without avoidable waste and with equitable participation in production and markets by all operators and other interested parties.
 (g) In any month wherein a purchaser or taker has a market demand/supply imbalance and must curtail purchases or takes in compliance with this Rule, Form 1004 B shall be filed by said purchaser or taker with the Oil and Gas Conservation Division.
 (h) Any interested party may file an application requesting that the Commission, for good cause shown, authorize limited deviation from the general priority schedule provided under (b) above. The Commission on its own motion may initiate a review of the continued need for such a limited deviation. After notice and hearing, the Commission may authorize limited deviation upon finding that the same is necessary in order to prevent waste, protect correlative rights, or is otherwise required by the public interest or authorized by law.
 
 
 [4]
 It should be noted that the trial court made no ruling concerning Sec. 239, which gives the State of Oklahoma the power to regulate production