

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| COMPREHENSIVE HEALTH OF PLANNED PARENTHOOD GREAT PLAINS, et al., | ) ) ) ) | |
| Respondents, | ) ) | WD88244 |
| v. | ) ) ) | OPINION FILED: October 14, 2025 |
| STATE OF MISSOURI, et al., | ) ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Jerri J. Zhang, Judge**

**Before Special Division:** Anthony Rex Gabbert, Chief Judge, Presiding,
Alok Ahuja, Judge, and Mark D. Pfeiffer, Judge

Comprehensive Health of Planned Parenthood Great Plains and Planned

Parenthood Great Rivers-Missouri (collectively, "Planned Parenthood"), filed a petition

seeking injunctive and declaratory relief to prevent the enforcement of various Missouri

statutes ("the Challenged Laws") that they allege violate the newly enacted Right to

Reproductive Freedom Initiative pursuant to Section 36 of the Missouri Constitution in

the Circuit Court of Jackson County, Missouri ("circuit court").

Along with their petition for permanent injunctive relief, Planned Parenthood moved for preliminary injunctive relief during the pendency of the litigation. Following a hearing and review of the parties' arguments on the matter, the circuit court entered two orders granting preliminary injunctions barring the enforcement of some, but not all, of the Challenged Laws. Via a writ proceeding, the Supreme Court of Missouri vacated the circuit court's order and instructed the circuit court to reevaluate the request for preliminary injunction under the standard articulated in *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724 (8th Cir. 2008). *State ex rel. Kehoe v. Zhang*, No. SC 101026, 2025 WL 1564397 (Mo. banc May 27, 2025). After reevaluating the motion for a preliminary injunction under the *Rounds* standard, the circuit court again entered an order granting a preliminary injunction to some, but not all, of the Challenged Laws.

Appellants ("the State") appealed the circuit court's preliminary injunctive ruling directly to the Supreme Court of Missouri, raising twenty points on appeal—asserting reversible error as to: the legal standing of Planned Parenthood to assert the underlying claims in its petition for injunctive relief (Points II, III, IV, and V); improper venue in Jackson County (Points VI and VII); a failure by Planned Parenthood to exhaust all administrative remedies before seeking relief in its underlying petition (Point VIII); the circuit court's ruling as to Planned Parenthood's likelihood of success on the merits of its underlying petition (Points I, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, and XVIII); the circuit court's ruling as to the balancing of harm and public interest favoring Planned Parenthood's request for preliminary injunctive relief (Point XIX); and the circuit court's

2

ruling as to Planned Parenthood's claim of alleged irreparable injury without preliminary injunctive relief (Point XX).

Holding it lacked exclusive jurisdiction, the Supreme Court transferred the appeal to this Court to determine whether the circuit court abused its discretion in granting the preliminary injunction. *Comprehensive Health of Planned Parenthood Great Plains v. State*, No. SC 101176, 2025 WL 2346611 (Mo. banc Aug. 12, 2025).

Because the circuit court's preliminary injunctive relief ruling is not clearly against the logic of the circumstances presently before the circuit court and it does not reflect a ruling that is so arbitrary and unreasonable as to shock the sense of justice or otherwise indicate a lack of careful consideration, we find no abuse of the discretion that is bestowed upon trial courts in this *preliminary* setting. Accordingly, the circuit court's preliminary injunctive relief ruling is affirmed.

**Procedural History**

On June 24, 2022, the United States Supreme Court overturned its decision in *Roe v. Wade*, eliminating a federal constitutional right to an abortion. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Before *Dobbs*, the federal constitutional right to abortion was subject to an extensive set of regulations enacted by the Missouri legislature. Shortly after the decision in *Dobbs*, the Missouri legislature enacted laws prohibiting all abortions in Missouri. On November 5, 2024, Missouri voters approved Section 36 of the Missouri Constitution, the Right to Reproductive Freedom Initiative. MO. CONST. art. I, § 36. Section 36 reads:

1. This Section shall be known as "The Right to Reproductive Freedom Initiative".

2. The government shall not deny or infringe upon a person's fundamental right to reproductive freedom, which is the right to make and carry out decisions about all matters relating to reproductive health care, including but not limited to prenatal care, childbirth, postpartum care, birth control, abortion care, miscarriage care, and respectful birthing conditions.

3. The right to reproductive freedom shall not be denied, interfered with, delayed, or otherwise restricted unless the Government demonstrates that such action is justified by a compelling governmental interest achieved by the least restrictive means. Any denial, interference, delay, or restriction of the right to reproductive freedom shall be presumed invalid. For purposes of this Section, a governmental interest is compelling only if it is for the limited purpose and has the limited effect of improving or maintaining the health of a person seeking care, is consistent with widely accepted clinical standards of practice and evidence-based medicine, and does not infringe on that person's autonomous decision-making.

4. Notwithstanding subsection 3 of this Section, the general assembly may enact laws that regulate the provision of abortion after Fetal Viability provided that under no circumstance shall the Government deny, interfere with, delay, or otherwise restrict an abortion that in the good faith judgment of a treating health care professional is needed to protect the life or physical or mental health of the pregnant person.

5. No person shall be penalized, prosecuted, or otherwise subjected to adverse action based on their actual, potential, perceived, or alleged pregnancy outcomes, including but not limited to miscarriage, stillbirth, or abortion. Nor shall any person assisting a person in exercising their right to reproductive freedom with that person's consent be penalized, prosecuted, or otherwise subjected to adverse action for doing so.

6. The Government shall not discriminate against persons providing or obtaining reproductive health care or assisting another person in doing so.

7. If any provision of this Section or the application thereof to anyone or to any circumstance is held invalid, the remainder of those provisions and the application of such provisions to others or other circumstances shall not be affected thereby.

8. For purposes of this Section, the following terms mean:

(1) "**Fetal Viability**", the point in pregnancy when, in the good faith judgment of a treating health care professional and based on the particular facts of the case, there is a significant likelihood of the fetus's sustained survival outside the uterus without the application of extraordinary medical measures.

(2) "**Government**",

      a. the state of Missouri; or

      b. any municipality, city, town, village, township, district, authority, public subdivision or public corporation having the power to tax or regulate, or any portion of two or more such entities within the state of Missouri.

On November 6, 2024, Planned Parenthood filed suit against the State of Missouri, the Department of Health and Senior Services ("DHSS"), the Board of Healing Arts and its named Members in their official capacities, the Board of Nursing and its Members in their official capacities, and Governor Michael L. Parson, Attorney General Andrew Bailey, DHSS Director Paula F. Nickelson, and Jackson County Prosecuting Attorney Jean Peters Baker in her individual and representative capacity for a proposed defendant class of 115 local Missouri prosecuting attorneys (collectively, "the State"). The petition sought a declaration that Missouri's laws banning and restricting abortion are unconstitutional and permanent injunctive relief preventing enforcement of the Challenged Laws. Contemporaneous with its petition, Planned Parenthood moved the court for a preliminary injunction preventing enforcement of the Challenged Laws during the pendency of the case.

In addition to a total prohibition on abortion (the "Total Ban") that took effect following the decision in *Dobbs*, the Challenged Laws include a set of cascading abortion

5

bans at eight, fourteen, eighteen, and twenty weeks (collectively, the "Gestational Age Bans"), §§ 188.056, 188.057, 188.058, 188.375; and a ban on abortion because of Down Syndrome or due to sex or race (the "Reasons ban"), §§ 188.038, 188.052; 19 CSR 10-15.010(1).[1]

Beyond an outright ban, Missouri law subjects abortion providers to extensive regulation and potential criminal penalties. Those laws, also challenged by Planned Parenthood, include: a requirement that abortion providers be licensed as ambulatory surgical centers (the "Abortion Facility Licensing Requirement"), §§ 197.200-.235, 334.100.2(27), and all of their implementing regulations, 19 CSR 30-30.050 to .070, 20 CSR 2150-7.140(2)(V); laws that require abortion providers have admitting (or similar) privileges at local hospitals (the "Hospital Relationship Restrictions"), §§ 188.080, 188.027.1(1)(e), 197.215.1(2), 19 CSR 30-30.060(1)(C)(4); a requirement that all abortion providers follow an approved complication plan for medication abortions (the "Medication Abortion Complication Plan Requirement"), § 188.021.2, 19 CSR 30-30.061; laws requiring that all tissue removed at the time of an abortion undergo a pathological examination (the "Pathology Requirements"), § 188.047, 19 CSR 10-15.030, 30-30.060(5)(B); laws requiring that patients receive certain state-mandated information before they receive an abortion (the "Abortion-Specific Informed Consent Laws"), §§ 188.027, 188.033, 188.039; laws that require patients to make two in-person visits to see the same physician at least seventy-two hours apart to obtain an abortion (the "Waiting

---

[1] All statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through July 7, 2025, unless otherwise indicated.

6

Period, In-Person, and Same Physician Requirements"), §§ 188.027, 188.039; laws that prohibit telemedicine appointments for a medication abortion and require that a physician be physically present for any medication abortion (the "Telemedicine Ban"), § 188.021; and a requirement that only physicians perform abortions (the "Advanced Practice Clinician Ban"), §§ 188.020, 188.080, 334.245, 334.735.3.

In response, on November 18, 2024, the State filed a Motion to Dismiss Defendant Baker and Transfer Venue. On November 25, 2024, the State filed a Motion to Dismiss Planned Parenthood's petition, arguing that insufficient facts had been pled to establish a facial constitutional challenge, that Planned Parenthood does not have third-party standing, and that there is no justiciable controversy because there is no risk the Challenged Laws will be enforced. The circuit court set a hearing for December 4, 2024, to take up all issues relating to the State's motions.

On December 4, 2024, after a hearing on the matter and reviewing all motions and responses filed by the parties, the circuit court denied the State's Motion to Dismiss Defendant Baker and Transfer Venue. The circuit court chose to take the matters of class certification and dismissal of the petition under advisement. In an effort to be fully apprised of the issues and relevant law, the circuit court requested additional briefing from the parties on the issue of class certification on December 18, 2024. At each turn of this case, the circuit court has provided the parties with ample opportunities to file, and the parties did file, legal suggestions in support or opposition to motions filed with the circuit court.

7

On December 20, 2024, after nearly three weeks of deliberation of the outstanding motions and the parties' additional briefing, legal suggestions, affidavits, stipulated facts, and hearing argument of counsel, the circuit court granted in part and denied in part Planned Parenthood's motion for preliminary injunction, and denied the State's Motion to Dismiss Planned Parenthood's petition. In a twenty-two-page order, the circuit court detailed its rationale for enjoining the enforcement of all requested statutes except for the Abortion Facility Licensing Requirements, §§ 197.200-.235, with the exception of sections 197.215.1(2), 334.100.2(27), 19 CSR 30-30.050 to .070, 20 CSR 2150-7.140(2)(V); the Medication Abortion Complication Plan Requirement statute, § 188.021.2; the In-Person and Same Physician Requirements within sections 188.027, 188.039; the Missouri Advanced Practice Clinician Ban, §§ 188.020, 188.080, 334.245, 334.735.3; and the Criminal Penalties within sections 197.235, 334.245, 188.080 in part, 188.030.3, and 574.200.2. Applying the four-factor test for a preliminary injunction set forth by the Missouri Supreme Court in *Gabbert*, the circuit court set forth its rationale on each factor separately and explained its reasoning in plain terms. *State ex rel. Dir. of Revenue, State of Mo. v. Gabbert*, 925 S.W.2d 838 (Mo. banc 1996).

On December 30, 2024, the State filed its Answer. On the same day, Planned Parenthood filed a Motion for Reconsideration, requesting the court reconsider its ruling as to the Abortion Facility Licensing Requirement regulations. On January 31, 2025, the circuit court held a hearing on the Motion for Reconsideration and Motion to Certify a Defendant Class. After hearing argument on the Motion for Reconsideration, the circuit court again requested additional briefing from the parties before it ruled on the matter.

On February 14, 2025, after the parties received an additional opportunity to provide supplemental legal suggestions to the circuit court on the issues, the circuit court entered an order granting Planned Parenthood's Motion to Certify a Defendant Class. In addition, the circuit court granted the outstanding Motion for Reconsideration, enjoining the enforcement of the Abortion Facility Licensing Requirement regulations.

On March 28, 2025, because the circuit court had still declined to grant the entirety of preliminary relief Planned Parenthood requested, Planned Parenthood filed Renewed and Second Motions for a Preliminary Injunction as to the Medication Abortion Complication Statute, § 188.021; the Medication Abortion Tail Insurance Statute, § 188.044; and all emergency regulations enacted by the State during the pendency of the case. The Renewed and Second Motions are outstanding in the circuit court.

On March 21, 2025, the State filed a Petition for Writ of Mandamus or Prohibition requesting writ relief from Missouri's appellate courts ordering the Honorable Jerri J. Zhang, the judge presiding over the underlying case, to vacate all preliminary injunctions in the case. On May 27, 2025, the Supreme Court of Missouri issued a Peremptory Writ ordering Judge Zhang to vacate her orders granting preliminary injunctive relief and ordering her to reevaluate the request for a preliminary injunction under a new standard as articulated in *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724 (8th Cir. 2008). *State ex rel. Kehoe*, 2025 WL 1564397.

In response, on July 3, 2025, the circuit court entered a new twenty-one-page order reevaluating Planned Parenthood's request for a preliminary injunction under the *Rounds* standard. The circuit court granted in part and denied in part the request for a preliminary

9

injunction, and enjoined the following laws: Missouri's Abortion Facility Licensing Requirements, §§ 197.200-.235, 334.100.2(27), and all of its implementing regulations, 19 CSR 30-30.050 to .070, 20 CSR 2150-7.140(2)(V); Missouri's Hospital Relationship Restrictions, §§ 188.080, 188.027.1(1)(e), 197.215.1(2), 19 CSR 30-30.060(1)(C)(4); Missouri's Medication Abortion Complication Plan Requirement regulation, 19 CSR 30-30.061; Missouri's Abortion-Specific Informed Consent Laws, §§ 188.027, 188.033, 188.039.4; Criminal Penalties for Abortion Providers, §§ 188.017.2, 188.056.1, 188.057.1, 188.058.1, 188.075, 188.080, 188.375.3; Abortion Complication Reporting Requirements, § 188.052, 19 CSR 10-15.010(1); Missouri's Pathology Requirements, § 188.047, 19 CSR 10-15.030, 30-30.060(5)(B); Missouri's Waiting Period Requirements, §§ 188.027, 188.039; and Missouri's Telemedicine Ban, § 188.021.1.

On July 7, 2025, the State directly appealed the circuit court's July 3, 2025 order granting in part and denying in part the request for preliminary injunction to the Supreme Court of Missouri, alleging the Supreme Court possessed exclusive jurisdiction pursuant to Article V, Section 3 of the Missouri Constitution to hear the appeal.[2] On July 17, 2025, the Supreme Court of Missouri issued an Order to Show Cause why the Supreme Court had exclusive jurisdiction. Following the parties' responses, the Supreme Court issued a unanimous opinion holding:

> Planned Parenthood raised claims [in its petition filed before the circuit court] that numerous Missouri statutes are unconstitutional in the

---

[2] On April 24, 2025, Governor Parson signed SB22, codified as § 526.010.2, into law, which in pertinent part permits the State to immediately appeal any preliminary injunctive relief ruling by a trial court enjoining operation of a duly enacted state statute as an interlocutory appeal.

underlying suit. The claims in this appeal, however, are that the circuit court erred in sustaining a motion for a preliminary injunction. Such claims do not present issues requiring an appellate court to evaluate and resolve the underlying constitutional validity claims in this matter. At this stage of the proceedings, because there has been no adjudication of the validity of the statutes in the underlying case, an appellate court cannot resolve any of the underlying constitutional validity claims pertaining to the particular statutes.

When this Court lacks exclusive appellate jurisdiction over an appeal, the lack of jurisdiction does not warrant dismissal. Mo. Const. art. V, sec. 11. Rather the proceeding shall be transferred to the appellate court having jurisdiction. *Id.* The Missouri Court of Appeals has general appellate jurisdiction over all appeals except those within this Court's exclusive appellate jurisdiction. Mo. Const. art. V, sec. 3. Because this appeal arises from the issuance of a preliminary injunction in the Jackson County circuit court, this appeal is transferred to the Missouri Court of Appeals, Western District, to address whether the circuit court abused its discretion in sustaining Planned Parenthood's motion for a preliminary injunction.

*Planned Parenthood Great Plains*, 2025 WL 2346611, at *4-5.

Likewise, at this stage in the case, the Missouri Supreme Court noted that "[t]he circuit court's finding that Planned Parenthood is likely to prevail on the merits is preliminary. This finding has been made before discovery has commenced, before the evidence has been collected, and before any arguments have been presented at trial." *Id.* at *4. Thus, the Supreme Court also declared that "[t]he issuance of a preliminary injunction, therefore, in no way adjudicates the merits of Planned Parenthood's constitutional challenges to the validity of state statutes." *Id.*

The circuit court is scheduled to hear more evidence and argument from the parties on the Renewed and Second Motions for a Preliminary Injunction prior to trial. In addition, a three-day bench trial where the circuit court will hear the merits of the

11

permanent injunction is scheduled to begin on January 12, 2026, only months away from our ruling today.

It is under this limited scope, then, that we take to task that which is assigned to us by the Missouri Supreme Court:  at this preliminary stage of the proceedings, has the circuit court abused its discretion in issuing the preliminary injunctive relief in question?

**Standard of Review**

This case involves the first appeal brought by the Attorney General under section 526.010.2, which became effective on April 24, 2025.  Section 526.010.2 provides:  "[i]n any action in which the state or a statewide official is preliminarily enjoined from implementing, enforcing, or otherwise effectuating any provision of the Constitution of Missouri, any Missouri statute, or any Missouri regulation, the attorney general may appeal the preliminary injunction."

At the outset, we emphasize the limited nature of our appellate review in the appeals newly authorized by section 526.010.2.  A preliminary injunction is an interlocutory order that is temporary in nature.  *Woods v. Juv. Shoe Corp. of Am.*, 361 S.W.2d 694, 695 (Mo. banc 1962).  At any time before entering a final judgment, the circuit court can amend, reverse or vacate a preliminary injunction.  *Id.*  The fact that the circuit court in such cases has ordered only interlocutory, preliminary, temporary relief—and has not definitively and finally resolved the underlying merits of the case—suggests that our review of such orders is more limited than the review typically afforded to final judgments.

In addition, in many of the cases in which a preliminary injunction is appealable under section 526.010.2, this Court will not have jurisdiction over any appeal after final judgment, because that later appeal will "involv[e] the validity . . . of a statute or provision of the constitution of this state" falling within the exclusive appellate jurisdiction of the Missouri Supreme Court under Article V, Section 3 of the Missouri Constitution. This is such a case. Thus, while we have been directed by the Supreme Court "to address whether the circuit court abused its discretion in sustaining Planned Parenthood's motion for a preliminary injunction," *Planned Parenthood Great Plains*, 2025 WL 2346611, at *5, we are mindful that we "cannot resolve any of the underlying constitutional validity claims pertaining to the particular statutes," *id.* at *4—**both** because of the preliminary stage of the proceedings, but **also** because of the constitutional limitations on our appellate jurisdiction.

The Supreme Court's exclusive appellate jurisdiction over any final judgment in this case will not apply *solely* to Planned Parenthood's constitutional challenges to statutory provisions. Instead, the Supreme Court's exclusive jurisdiction will apply to *every issue* which may be subject to final, definitive resolution in this case. If a case involves a real and substantial constitutional challenge to a state statute, the Supreme Court "has jurisdiction over all other issues raised because once jurisdiction attaches, it extends to all issues in the case." *Black River Motel, LLC v. Patriots Bank*, 669 S.W.3d 116, 122 n.6 (Mo. banc 2023) (citing *Estate of Austin v. Snead*, 389 S.W.3d 168, 170 n.9 (Mo. banc 2013)). When a real and substantial claim concerning the validity of a

13

Missouri statute is raised in an appeal, the Court of Appeals cannot decide the merits of *any* issue presented in the case:

> We know of no precedent by which a case could be taken to the Court of Appeals for resolution of some issues and then transferred to this Court for a decision or other issues. The historic and sound rule is that the appeal is properly lodged in the court having jurisdiction over all issues in the case.

*State ex rel. Union Elec. Co. v. Pub. Serv. Comm'n*, 687 S.W.2d 162, 165 (Mo. banc 1985). "Appeals are not bifurcated under our practice." *Id.*

Generally, "[t]he law of the case doctrine governs successive appeals involving substantially the same issues and facts, and applies appellate decisions to later proceedings in that case." *City of Harrisonville v. Bd. of Trustees of Mo. Petroleum Storage Tank Ins. Fund*, 655 S.W.3d 770, 777 (Mo. banc 2022) (citation modified). "The doctrine bars relitigating issues not only expressly raised and decided on appeal, but also those that could have been raised but were not." *Id.* (citation modified). But the "law of the case" doctrine could not preclude the Supreme Court from addressing any issue in an eventual appeal of a final judgment in this case, because this Court has no authority to decide such issues.

Despite the wording of Article V, Section 3, the Missouri Supreme Court **has** held that "[t]his Court's exclusive appellate jurisdiction is not invoked simply because a case involves a constitutional issue"; instead, to invoke Supreme Court jurisdiction "[t]he constitutional issue must be real and substantial, not merely colorable." *Goodman v. Saline Cnty. Comm'n*, 699 S.W.3d 437, 440 (Mo. banc 2024) (quoting *McNeal v. McNeal-Sydnor*, 472 S.W.3d 194, 195 (Mo. banc 2015)). If a constitutional challenge to

14

a state statute is "merely colorable[,] . . . the intermediate appellate court has jurisdiction." *D.E.G. v. Juv. Officer of Jackson Cnty.*, 601 S.W.3d 212, 215 n.2 (Mo. banc 2020). While not a precise analogue, we believe similar principles apply here: unless a legal argument which may recur after entry of final judgment is merely colorable, this Court should refrain from finally deciding it in this interlocutory appeal.

Accordingly, nothing in this opinion should be read as definitively resolving any issue—procedural or substantive—which may be presented on appeal of a final judgment in this case. Instead, we limit our review to the task assigned to us by the Supreme Court: determining "whether the circuit court ***abused its discretion*** in sustaining Planned Parenthood's motion for a preliminary injunction." *Planned Parenthood Great Plains*, 2025 WL 2346611, at *5 (emphasis added).

"The [circuit] court abuses its discretion when the judgment is clearly against the logic of the circumstances then before the trial court and is so arbitrary and unreasonable as to shock the sense of justice and indicates a lack of careful consideration." *Burg v. Dampier*, 346 S.W.3d 343, 357 (Mo. App. W.D. 2011). "The circuit court is vested with a broad discretionary power to shape and fashion relief to fit the particular facts, circumstances and equities of the case before it." *Priorities USA v. State*, 591 S.W.3d 448, 452 (Mo. banc 2020) (citation modified) (quoting *Burg*, 346 S.W.3d at 357.) "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." *St. Louis Cnty. v. River Bend Ests. Homeowners' Ass'n*, 408 S.W.3d 116, 123 (Mo. banc 2013) (quoting *In re Care and Treatment of Donaldson*, 214 S.W.3d 331, 334 (Mo. banc 2007)).

**Procedural Points (Points II-VIII)**

The State argues that the circuit court lacked authority to issue preliminary injunctive relief due to procedural defects in Planned Parenthood's lawsuit. Specifically, the State argues improper venue (Points VI and VII), lack of standing (Points II, III, IV, and V), and failure to exhaust administrative remedies (Point VIII).

These threshold procedural issues are technically separate from the circuit court's grant of a preliminary injunction. However, as the Supreme Court explained in *State ex rel. Kehoe v. Zhang*, in order to establish a right to a preliminary injunction, it was necessary for Planned Parenthood to show that it "'is likely to prevail on the merits.'" 2025 WL 1564397, at *1 (quoting *Rounds*, 530 F.3d at 733). "When evaluating likelihood of success on the merits, it is critical to consider all factors that may bear on the probability that the moving party will succeed." *Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1267 (10th Cir. 2024). A plaintiff's "affirmative burden of showing a likelihood of success on the merits necessarily includes a likelihood of the court's *reaching* the merits, which in turn depends on a likelihood that [the] plaintiff has standing." *Moms for Liberty v. Wilson Cnty. Bd. of Educ.*, No. 24-5056, 2025 WL 2599923, at *5 (6th Cir. Sep. 9, 2025) (emphasis added) (citation modified). Thus, where a threshold procedural issue could operate to preclude a circuit court from having either authority or jurisdiction to reach the merits of a claim for relief, we have authority to address that issue in evaluating the likelihood of success on the merits, albeit through the limited lens of determining whether the grant of preliminary injunctive relief constituted an abuse of discretion.

16

That said, an interlocutory appeal from the grant of preliminary injunctive relief pursuant to section 526.010.2 is subject to the same preservation requirements applicable to all appeals. We will not consider issues in the context of evaluating the likelihood of success on the merits that are not properly before us because they have not been preserved for our review.

**Points VI and VII**

In Points VI and VII, the State argues the circuit court lacked proper venue to issue the preliminary injunction.

"Venue refers to the situs in which a court of competent jurisdiction may adjudicate an action." *State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 59 (Mo. banc 1993). Under section 476.410, "if venue is improper where a petition is filed, a circuit judge must transfer the case, upon a motion to dismiss for improper venue, to a circuit court in which venue is proper." *Id.*

Planned Parenthood has asserted that venue is proper in Jackson County because one of the defendants in the action is Jean Peters Baker, who was the Jackson County Prosecutor at the time this suit was filed.[3] Because of Baker's presence as a defendant, Planned Parenthood contends that venue is proper under section 508.010.2(2), which

---

[3] Melesa Johnson, the current Jackson County Prosecutor, was substituted for Jean Peters Baker as a defendant following the end of Baker's term of office. Venue is determined, however, at the time the case is brought. *State ex rel. Linthicum v. Calvin*, 57 S.W.3d 855, 857 (Mo. banc 2001). Because Jean Peters Baker was the correct defendant at the time the suit was brought, she is the relevant party for purposes of determining venue.

17

provides that, in non-tort actions with multiple defendants, suit may be brought in the county in which any defendant resides.

In Point VI, the State contends that the circuit court erred in denying the State's Motion to Dismiss Baker as a defendant and to Transfer Venue, because she is not "adverse" to Planned Parenthood due to "promises" she purportedly made to not enforce the Challenged Laws, and the positions she took in this litigation largely agreeing with Planned Parenthood's substantive arguments. The State argues that, because Baker should have been dismissed as a defendant, venue in Jackson County was improper, and venue should have been transferred to Cole County, Missouri, where all other defendants reside. The circuit court denied the State's Motion to Dismiss Baker and to transfer Venue by order dated December 4, 2024.

In its suit, Planned Parenthood seeks both declarations that the Challenged Laws are unconstitutional and injunctions against their enforcement. "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." *Mo. Health Care Ass'n v. Atty. Gen.*, 953 S.W.2d 617, 620-21 (Mo. banc 1997) (quoting § 527.110[4]). "The state official empowered to enforce a law that is challenged through a declaratory judgment action has an interest that would be affected by a court's declaration." *Id.* at 621 (citing *Sch. Dist. v. Smith*, 111 S.W.2d 167, 168 (Mo. 1937)). "A justiciable controversy involving the constitutionality of a statute

---

[4] Section 527.110 has not been amended since its enactment in 1939.

18

exists between the plaintiff and the state official charged with the duty to enforce that law." *Midwest Freedom Coal., LLC v. Koster*, 398 S.W.3d 23, 26 (Mo. App. W.D. 2013). "The local prosecutor is charged with prosecuting criminal actions within its county." *Id.* at 27 (citing § 56.060).

Planned Parenthood alleges that it intends to perform abortions in Jackson County. Thus, it appears that the Jackson County Prosecutor would be one of the parties tasked with enforcing the Challenged Laws against Planned Parenthood. In these circumstances, the circuit court did not abuse its discretion in concluding that the State's venue objections did not deny the court the authority to enter a preliminary injunction. *See Midwest Freedom Coal.*, 398 S.W.3d at 27 (affirming dismissal of declaratory judgment contending that criminal statute was unconstitutional, based on plaintiff's failure to join as a defendant "[t]he local prosecutor . . . charged with prosecuting criminal actions within its county").

In Point VII, the State argues that Jackson County is an improper venue for Planned Parenthood Great Rivers ("Great Rivers"), which operates primarily in St. Louis. The State asserts that Great Rivers relies entirely on joining Planned Parenthood of Great Plains' suit to have venue in Jackson County and that Great Rivers could not demonstrate Jackson County is a proper venue if it had sued on its own.[5] The State never raised this theory of improper venue in the circuit court, and "[w]e generally will not convict the

---

[5] In *State ex rel. Johnson & Johnson v. Burlison*, 567 S.W.3d 168, 171-72 (Mo. banc 2019), the Supreme Court held that the permissive joinder of parties cannot extend venue to a county where venue would otherwise be improper for the joined party.

trial court of error on an issue that was not put before it to decide." *Cent. Trust Bank v. Graves*, 495 S.W.3d 797, 801 (Mo. App. W.D. 2016) (quoting *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 383 (Mo. App. E.D. 2014)). We cannot conclude that the circuit court abused its discretion in entering a preliminary injunction based on a contention involving the circuit court's authority to do so that was never raised with, or ruled upon by, the circuit court.

Points VI and VII are denied.

## Points IV and V

In Points IV and V, the State argues that Planned Parenthood may not acquire third-party standing to seek an injunction by invoking the reproductive rights of its patients. The State raised similar arguments in its Motion to Dismiss Planned Parenthood's petition, which was expressly denied by the circuit court's December 20, 2024 order granting preliminary injunctive relief. In the December 20, 2024 order, the circuit court found that Planned Parenthood had both first- and third-party standing to pursue the claims asserted in its petition.[6]

We need not address the State's challenges to Planned Parenthood's third-party standing to sue because the State has not challenged the circuit court's independent determination that Planned Parenthood has first-party standing to pursue the claims

---

[6] The December 20, 2024 order was vacated by the Supreme Court's Peremptory Writ issued on May 27, 2025. Although the circuit court's standing determinations were not repeated in the July 3, 2025 order granting preliminary injunctive relief, we can nonetheless conclude from this record that the circuit court did not believe that standing concerns deprived it of the authority to entertain Planned Parenthood's request for preliminary injunctive relief on the merits.

asserted in its petition. Because first-party standing alone would be sufficient to support the circuit court's entertainment of the merits of Planned Parenthood's petition, we cannot conclude that the circuit court abused its discretion in granting preliminary injunctive relief.

We do recognize that the issue of a party's standing to bring a lawsuit can be examined *sua sponte*. *CACH, LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. banc 2012) ("Courts have a duty to determine if a party has standing prior to addressing the substantive issues of the case."). However, we cannot conclude on this record that the circuit court abused its discretion when it reached the conclusion for purposes of granting preliminary injunctive relief that Planned Parenthood had first-party standing to seek that relief.

"A justiciable controversy exists where [1] the plaintiff has a legally protectable interest at stake, [2] a substantial controversy exists between parties with genuinely adverse interests, and [3] that controversy is ripe for judicial determination." *Schweich v. Nixon*, 408 S.W.3d 769, 773 (Mo. banc 2013) (quoting *Mo. Health Care Ass'n*, 953 S.W.2d at 620). "The first two elements of justiciability are encompassed jointly by the concept of 'standing.'" *Id.* at 774. "Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." *Ste. Genevieve Sch. Dist. R-II v. Bd. of Aldermen of City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002).

Planned Parenthood has alleged that the enjoined statutes and regulations violate its rights under Article I, Section 36.5, and Article I, Section 36.6, of the Missouri

21

Constitution. Section 36.5 provides: "[n]or shall any person assisting a person in exercising their right to reproductive freedom with that person's consent be penalized, prosecuted, or otherwise subjected to adverse action for doing so." MO. CONST. art. I, section 36.5.

The circuit court found in its December 20, 2024 order that Planned Parenthood had first-party standing because "[i]t is uncontested that [Planned Parenthood] assists[s] patients in exercising their right to abortion and that [Planned Parenthood] would be subject to criminal penalties for violating the challenged laws." It appears that *all* of the statutes and regulations that Planned Parenthood challenges impose a criminal punishment on the abortion provider for violating them.[7] Because Planned Parenthood alleges it would be the abortion provider, there was a substantial basis for the circuit court to conclude in the context of granting preliminary injunctive relief that Planned Parenthood would be adversely affected by the application of the Challenged Laws.

Furthermore, Planned Parenthood argues that sections 197.200-.235, 334.100.2(27), and their implementing regulations, discriminate against abortion providers when compared to providers of other similar medical services. Planned Parenthood contends that this violates Section 36.6, which prohibits discrimination:

---

[7] The circuit court's ordered enjoined sections 188.017, 188.056-.058, 188.375. Each of these statutes impose a punishment of a class B felony and license revocation for an abortion provider that violates them. The circuit court also enjoined portions of sections 188.021.1-.2, 188.027, 188.033, 188.038, 188.039, 188.047, 188.080, and all regulations implementing the relevant portions of these statutes. Section 188.075 provides that any knowing violation of sections 188.010-.085 is a class A misdemeanor unless a different punishment is otherwise specified, and section 188.065 provides that the provider's license shall be suspended for the same.

"against *persons providing* or obtaining *reproductive health care* or assisting another person in doing so." MO. CONST. art. I, § 36.6 (emphasis added). This provided an additional substantial basis for the circuit court's determination that Planned Parenthood had first-party standing to assert its constitutional challenges.

The circuit court did not abuse its discretion when it relied on Planned Parenthood's assertions that the Challenged Laws could subject it to criminal penalties, and discriminate against it, to conclude that it could reach the merits of Planned Parenthood's request for preliminary injunctive relief.

Points IV and V are denied.

**Point II**

In Point II, the State argues that Planned Parenthood also lacks standing because the State has disavowed enforcing the enjoined laws, so the parties do not have a live, genuine controversy. Standing requires "a substantial controversy . . . between parties with genuinely adverse interests . . . ." *Schweich*, 408 S.W.3d at 773. This claim was raised in the State's Motion to Dismiss Planned Parenthood's petition, and was denied, without discussion, by virtue of the circuit court's denial of the Motion to Dismiss in its December 20, 2024 order.

To support its position, the State cites to a letter issued by the Attorney General approximately two weeks after Planned Parenthood filed its lawsuit.[8] The circuit court

---

[8] In pertinent part, the Attorney General's letter of November 22, 2024, stated:

Missouri statutes entirely prohibit elective abortion—*i.e.*, abortions other than those performed because of a medical emergency. §§ 188.017, -.030,

did not abuse its discretion in determining that the Attorney General's letter did not have the effect of mooting the present controversy. As an initial matter, the letter only addressed the enforceability of five statutes: the Total Ban, the Gestational Age Bans, and the Post-Viability Abortion Ban. §§ 188.017, 188.030, 188.056, 188.057, 188.058. With respect to every other enjoined statute and regulation, the Attorney General makes no promises it will not seek to enforce them. Thus, the State's argument in Point II could only apply to the portion of the preliminary injunction enjoining statutes relating to those referenced by the Attorney General's letter.[9]

With regard to those enjoined statutes, the circuit court did not abuse its discretion in concluding that a live controversy remains despite the Attorney General's letter. Planned Parenthood argues that these statutes are unconstitutional in all circumstances and must be enjoined in their entirety. Although the State asserts that it agrees with Planned Parenthood that these laws are unconstitutional and that it disavows enforcing

---

RSMo. Missouri statutes also have overlapping provisions that prohibit elective abortions after 8 weeks (§ 188.056), 14 weeks (§ 188.057), and 18 weeks (§ 188.058). If Amendment 3 is certified and goes into effect, it will generally prohibit the Attorney General, the Governor, locally elected prosecutors, the Department of Health and Senior Services, the Division of Professional Registration, and other officials from enforcing these provisions.

[9] Further, the Attorney General's letter does not bind local prosecuting attorneys. While a particular Attorney General may opine that a statute is unconstitutional or otherwise unenforceable, such letter pronouncement by the Attorney General does not bind or hinder a local prosecutor from charging a person with a violation of that statute. Instead, until such time as a *court* declares a statute unconstitutional or otherwise unenforceable, a local prosecutor is not prohibited from relying upon such statute to charge a person with a crime. Here, the circuit court's preliminary injunction serves as a preliminary ruling that local prosecutors may not presently enforce the Challenged Laws that have been preliminarily enjoined.

24

them, the letter the State cites as its disavowal provides: "If Amendment 3 is certified, there will remain some circumstances where these five statutes are enforceable, and the Attorney General will vigorously enforce them in those circumstances." Because Planned Parenthood argues that the statutes *cannot* be enforced in any circumstance while the Attorney General argues that the statutes *can* be enforced in some circumstances, the circuit court did not abuse its discretion in concluding that a live legal controversy with respect to each of these statutes persisted.

Point II is denied.

## Point III

In Point III, the State argues that Planned Parenthood does not have standing because litigation under the Reasons Ban[10] is not yet a controversy that is ripe for judicial determination because Planned Parenthood pleaded that it has never knowingly performed an abortion that would violate the ban. Although Point III is styled as a challenge to standing, the State's argument in Point III is developed as a ripeness challenge. As previously noted, ripeness implicates the justiciability of a case. *See Schweich*, 408 S.W.3d at 774. Although the State did not raise this particular issue in the circuit court, "[p]rior to addressing the merits of a case, a court must determine whether a case meets the requirements for a justiciable controversy," including ripeness. *Mo. State*

---

[10] The "Reasons Ban" contained in section 188.038 provides that no person shall perform or induce an abortion on a woman if the person knows that the woman is seeking the abortion solely because of the unborn child's race, sex, or potential of Down Syndrome.

*Conf. of Nat'l Ass'n for the Advancement of Colored People v. State*, 633 S.W.3d 843, 848 (Mo. App. W.D. 2021).

"A court cannot render a declaratory judgment unless the petition presents a controversy ripe for judicial determination." *Mo. Health Care Ass'n*, 953 S.W.2d at 621. "A ripe controversy is a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* The State asserts that "there are no facts" for this Court to evaluate with respect to Planned Parenthood's request to enjoin the Reasons Ban because Planned Parenthood has not alleged that it has performed an abortion in violation of the Reasons Ban. The State argues that Planned Parenthood must allege a specific instance where it intends to violate the Reasons Ban before the facts are sufficiently ripe for adjudication.

Case law suggests, however, that ripeness does not require that a party subject itself to prosecution before requesting relief from an unconstitutional statute:

> "Parties need not subject themselves to a multiplicity of suits or litigation or await the imposition of penalties under an unconstitutional enactment in order to assert their constitutional claim for an injunction once the gun has been cocked and aimed and the finger is on the trigger, it is not necessary to wait until the bullet strikes . . . ."

*Planned Parenthood of Kansas v. Nixon*, 220 S.W.3d 732, 739 (Mo. banc 2007) (citation modified) (quoting *ANR Pipeline Co. v. Corp. Comm'n of State of Okla.*, 860 F.2d 1571, 1578 (10th Cir. 1988)).

> Pre-enforcement constitutional challenges to laws are ripe when (1) "the facts necessary to adjudicate the underlying claims [are] fully developed" and (2) "the laws at issue [are] affecting the plaintiffs in a manner that [gives] rise to an immediate, concrete dispute." "*Cases presenting predominantly legal questions are particularly 'amenable to a conclusive*

*determination in a pre-enforcement context,'* and generally require less factual development."

*Id.* (alteration in original) (emphasis added) (citation omitted). In assessing the ripeness of a pre-enforcement challenge, the Supreme Court has stated that "[o]ne must assume the State will enforce its laws." *Id.*

In its petition, Planned Parenthood alleges that it intends to provide abortions to "the full extent allowed by law." Planned Parenthood has a right to assist others in exercising their right to reproductive freedom without punishment under Article I, Section 36.5 of the Missouri Constitution. Planned Parenthood alleges that the Reasons Ban is an unlawful restriction on a woman's right to reproductive freedom and that enforcing it would violate Planned Parenthood's right to assist women in exercising their right to reproductive freedom. Thus, a fair reading of Planned Parenthood's petition implies that it intends to provide abortions even in the event that the abortion would conflict with the Reasons Ban.

The circuit court did not abuse its discretion in concluding that the dispute concerning the constitutionality of the Reasons Ban is immediate and sufficiently definite. The Reasons Ban currently prohibits Planned Parenthood from providing abortions that it intends to provide and that it alleges a legally protected interest to provide. In the current absence of the State's unequivocal assurance to the contrary, Planned Parenthood may presume that the State will enforce the Reasons Ban as written if it is violated. These are the type of circumstances that justify pre-enforcement relief.

Point III is denied.

## Point VIII

In Point VIII, the State argues the circuit court erred in issuing the preliminary injunction because Planned Parenthood failed to fully exhaust its available administrative remedies in that it did not request a waiver of the challenged administrative regulations. This contention was not raised with or ruled upon by the circuit court. It is not preserved for our review in the context of determining whether the circuit court abused its discretion in granting preliminary injunctive relief.

Point VIII is denied.

## Points Relating to the Injunction (Points I, IX-XX)

Because the State has not demonstrated that the circuit court abused its discretion in concluding that it had authority to issue the preliminary injunction, we now consider the discretion exercised by the circuit court in issuing the preliminary injunction itself.

The decision to grant or deny a preliminary injunction requires a "flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *Rounds*, 530 F.3d at 729 n.3; *accord Planned Parenthood Great Plains*, 2025 WL 2346611, at *2. "[A] party seeking a preliminary injunction of the implementation of a state statute must demonstrate more than just a 'fair chance' that it will succeed on the merits." *Rounds*, 530 F.3d at 731-32. Instead, the movant must meet the more rigorous standard of showing that they are "likely to prevail on the merits." *Id.* at 732; *State ex rel. Kehoe*, 2025 WL 1564397, at *1. "[A] more rigorous standard

'reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'"[11] *Rounds*, 530 F.3d at 732 (quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995)).

When the movant seeks to enjoin a duly enacted statute, the court must "make a threshold finding that a party is likely to prevail on the merits." *Rounds*, 530 F.3d at 733. "If the party with the burden of proof makes a threshold showing that it is likely to prevail on the merits, the district court should then proceed to weigh the other *Dataphase*

---

[11] Unlike most other cases that have applied the *Rounds* standard, here there is less concern that democratic processes are being hastily overhauled without proper consideration of duly enacted laws. Missouri voters responded to those duly enacted laws by amending the Constitution to provide a right to reproductive freedom through the "full play of the democratic process." *Rounds*, 530 F.3d at 732 n.6. Both the laws to be enjoined and the law allegedly making the laws at issue unconstitutional were democratically enacted. "Constitutional provisions are subject to the same rules of construction as other laws, except that constitutional provisions are given a broader construction due to their more permanent character." *Robust Mo. Dispensary 3, LLC v. St. Louis Cnty.*, No. SC 100898, 2025 WL 2053566, at *3 (Mo. banc July 22, 2025) (quoting *Pestka v. State*, 493 S.W.3d 405, 408-09 (Mo. banc 2016)). And, where a constitutional amendment is voted upon by Missouri's citizenry in apparent response to a legislative enactment on the same topic, the appellate courts of Missouri give special deference to such constitutional amendment when compared to a statute on the same topic. *No Bans on Choice v. Ashcroft*, 638 S.W.3d 484, 488-89 (Mo. banc 2022).

Thus, although the heightened standard undoubtedly applies here, the same concerns underlying the application of that test are not present here as they are in the vast majority of cases applying the *Rounds* standard. *See, e.g., Rodgers v. Bryant*, 942 F.3d 451, 453 (8th Cir. 2019) (Plaintiffs attacked the constitutionality of a duly enacted anti-loitering law based on a general allegation it violated their First Amendment rights, without pointing to any other law making the anti-loitering law unconstitutional); *Brandt ex rel. Brandt v. Rutledge*, 47 F.4th 661, 668 (8th Cir. 2022), *abrogated sub nom.*, *Brandt ex rel. Brandt v. Griffin*, 147 F.4th 867 (8th Cir. 2025) (denying a permanent injunction and dissolving a previously granted preliminary injunction in a suit attacking the constitutionality of law enacted by the Arkansas legislature based on a general allegation that it violated the Equal Protection clause).

factors." *Rounds*, 530 F.3d at 732. "No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue." *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) (quoting *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006)). However, the "most important factor" is whether the movant can show a probability of success on the merits. *Missouri v. Trump*, 128 F.4th 979, 991 (8th Cir. 2025) ("We first consider the *most important factor*— whether the states have shown a probability of success on the merits." (emphasis added)). As previously discussed, our appeal is limited to addressing "whether the circuit court abused its discretion in sustaining Planned Parenthood's motion for a preliminary injunction." *Planned Parenthood Great Plains*, 2025 WL 2346611, at *5.

We evaluate a trial court's discretion in crafting the scope of its preliminary injunction in light of the underlying purpose of a preliminary injunction, which is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Id.* at *3; *see State ex rel. Myers Mem'l Airport Comm., Inc. v. City of Carthage*, 951 S.W.2d 347, 352 (Mo. App. S.D. 1997) ("[T]he purpose of a preliminary injunction is to preserve the status quo until the trial court adjudicates the merits of the claim for a permanent injunction."); *see also Payroll Advance, Inc. v. Yates*, 270 S.W.3d 428, 437 (Mo. App. S.D. 2008) ("The issuance and terms of an injunction rest largely in the sound discretion of the trial court, which is vested with a broad discretionary power to shape and fashion the relief it grants to fit particular facts, circumstances and equities of the case before it." (citation modified)).

### a. Likelihood of Success on the Merits *Rounds* Factor (Points I, IX-XVIII)

In nine points, the State argues the circuit court erred in issuing the preliminary injunction because Planned Parenthood will *not* be able to succeed on the merits for nine separate *constitutionally applied* reasons. As explained above, in assessing whether the circuit court abused its discretion by issuing a preliminary injunction, we must review the circuit court's determination that Planned Parenthood was "likely to prevail on the merits" of its constitutional challenges to a series of abortion statutes and regulations. *Rounds*, 530 F.3d at 732; *State ex rel. Kehoe*, 2025 WL 1564397, at *1. The State's arguments in Points IX to XVIII are framed as if this Court were entitled to decide the merits of Planned Parenthood's constitutional challenges. In its opinion transferring this appeal to this Court, however, the Supreme Court made clear that this appeal did not require—or authorize—any appellate court to definitively determine the validity of the challenged statutes and regulations. The Court explained: "although weighing whether Planned Parenthood is likely to prevail on the merits requires consideration of the underlying constitutional claims to some extent, such consideration does not constitute a determination as to the validity of these statutes." *Planned Parenthood Great Plains*, 2025 WL 2346611, at *3. The Court "cautioned against improperly equat[ing] 'likelihood of success' with 'success' and treating preliminary injunctions as 'tantamount to decisions on the underlying merits.'" *Id.* (alteration in original) (quoting *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025)). For the reasons which follow, we conclude that the circuit court did not abuse its discretion in finding that Planned Parenthood had showed a likelihood of success sufficient to justify entry of a preliminary injunction.

31

First, Planned Parenthood has plainly established at least a *prima facie* case that the challenged provisions are unconstitutional under Section 36.3. Under Section 36.3, any governmental regulation which "denie[s], interfere[s] with, delay[s], or otherwise restrict[s]" an individual's Section 36.2 "right to make and carry out decisions about all matters relating to . . . abortion care" is "presumed invalid." Like ***any*** regulation of the actions of private parties, the challenged regulatory requirements each "interfere with," "delay," and/or "restrict" abortion access in some fashion, by imposing additional conditions before an abortion can be performed. Although the State argues that Section 36 only restricts statutes and regulations which *directly* bar or restrict abortion access, nothing in Section 36 says that it is limited to "direct" denial, interference, delay, or restriction. Section 36.3 states that "[t]he right to reproductive freedom shall not be denied, interfered with, delayed, *or otherwise restricted*" without a showing of a compelling governmental interest, and that "*[a]ny* denial, interference, delay, or restriction of the right to reproductive freedom shall be presumed invalid" (emphasis added). The emphasized language suggests that Section 36 applies to ***all*** statutes and regulations which have the effect of interfering with or restricting access to abortion, whether those statutes and regulations impose such interference or restrictions directly ***or*** indirectly.

Section 36.3 specifies that, once it is determined that challenged statutes or regulations deny, interfere with, delay, or otherwise restrict access to abortion, those statutes or regulations are "presumed invalid," and *the State* then has the burden of establishing the validity of the challenged measures, by showing that the measures are

"justified by a compelling governmental interest achieved by the least restrictive means." An interest can qualify as "compelling" only "if it is for the limited purpose and has the limited effect of improving or maintaining the health of a person seeking care, is consistent with widely accepted clinical standards of practice and evidence-based medicine, and does not infringe on that person's autonomous decision-making."

In its briefing, the State argues at some length that certain of the challenged regulations, such as the Hospital Relationship Restrictions and Pathology Requirement, may be warranted to protect the health of the patient in *certain* cases, such as where a patient lives close to the abortion facility, or exhibits symptoms of an ectopic pregnancy. However, by contending that the challenged measures may be justified in *some* circumstances, the State arguably concedes that the measures as written are overbroad, and therefore do not achieve their patient-protective objectives "by the least restrictive means." In addition to this presumption and as stated previously, the State has also already conceded that numerous statutory provisions contained within the Challenged Laws are, in fact, unconstitutional and unenforceable.

In addition, while the State may have presented evidence to the circuit court indicating that the challenged measures were medically necessary and appropriate, and intended to protect the health and welfare of patients, Planned Parenthood presented its own evidence indicating that the statutes and regulations it challenged were not medically necessary to safeguard patient health, did not reflect widely accepted clinical standards of practice and evidence-based medicine, and were in multiple cases unachievable. By entering its preliminary injunction, we presume that the circuit court made the

preliminary, interlocutory determination that the State was unlikely to be able to establish that the challenged measures served a compelling interest in protecting patient health using the least restrictive means.

Quite apart from Section 36.3, Section 36.6 provides that "[t]he Government shall not discriminate against persons providing or obtaining reproductive health care or assisting another person in doing so." "Discriminate" means "to make a difference in treatment or favor on a class or categorical basis in disregard of individual merit." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 648 (unabridged ed. 2002).

In this case, the statutes and regulations which Planned Parenthood challenges all regulate *solely* abortion care. Moreover, the circuit court's judgment finds that "miscarriage management and abortion medication/procedures often mirror each other," yet—unlike abortion care—"miscarriage management can be provided [in Missouri] on an outpatient basis without a special facility license." Although we do not ourselves decide the merits of the issue, we conclude that the circuit court did not abuse its discretion in preliminarily finding that Planned Parenthood had established a likelihood of success under Section 36.6 based on the differential treatment of procedures which the circuit court found to be medically similar.

In addition, we note that the DHSS's regulations specify that facilities performing *surgical procedures* need not comply with regulations similar to the Abortion Facility Licensing Requirement, if those facilities do not "primarily" provide surgical services (in terms of patient population or revenues); the regulations also exempt facilities performing surgical procedures if the facility is "used as an office or clinic for the private practice of

34

a physician, dentist or podiatrist." 19 CSR § 30-30.010(1)(B)(1-2). The Abortion Facility Licensing Requirement applies to *any* non-hospital facility "in which abortions are performed or induced," while an appreciable number of facilities performing surgical services are exempted from regulations governing ambulatory surgical centers. This circumstance provided an additional basis for the circuit court's preliminary discretionary determination that Planned Parenthood had shown a likelihood of success under Section 36.6's anti-discrimination principle.

The burden of proving that there are constitutional applications of the Challenged Laws has shifted to the State. Based on the limited and incomplete record before the circuit court at this juncture of the proceedings, the circuit court simply was not convinced that the State had demonstrated that it would meet that burden of proof and chose to exercise its discretion to maintain the status quo during the pendency of the proceedings below via *preliminary* injunctive relief that favored, in its view, Missouri's constitutional provisions over statutory provisions.

Again, the question posed to us is, under these circumstances and at this preliminary stage of the proceedings below: was the circuit court's threshold determination on the "likely to prevail on the merits" *Rounds* factor an abuse of discretion? Was the circuit court's decision "so arbitrary and unreasonable as to shock the sense of justice and indicat[ive of] a lack of careful consideration"? *See Burg*, 346 S.W.3d at 357.

As documented in our recitation of the procedural history, the circuit court has engaged in exhaustive consideration of the preliminary injunction: it received hundreds

35

of pages of written briefs from the parties; it allowed multiple hearings for oral arguments; it accepted multiple witness declarations from both parties; it initially issued the preliminary injunction after weeks of deliberation; it then reconsidered the preliminary injunction on motions from the parties and altered the scope of the injunction in response to their arguments; and then it separately reconsidered the preliminary injunction in light of our Supreme Court's order in *State ex rel. Kehoe v. Zhang*. Furthermore, the circuit court has never blindly followed the requests of either party in shaping its injunction ruling; instead, it has followed the record the parties have developed and granted some, but not all, of the requests of each party in tailoring the injunction. This long process culminated in the preliminary injunction ruling that we now review.

At this juncture of the proceedings, the reasoning provided by the circuit court is sufficient for us to conclude that the circuit court's preliminary determination that the *Rounds* "likely to succeed on the merits" factor favors Planned Parenthood's position was not made in such a careless, arbitrary, or un-reasoned manner as to amount to an abuse of discretion. We acknowledge the possibility that reasonable minds could disagree with the circuit court's initial analysis on this *Rounds* factor. But where there is room for reasonable minds to disagree, we are compelled by our standard of review to find no abuse of discretion under such scenario. *See River Bend Ests. Homeowners' Ass'n*, 408 S.W.3d at 123. Whether the circuit court's reasoning ultimately proves correct is a decision to be made at a later date upon a fully developed record. *See Planned Parenthood Great Plains*, 2025 WL 2346611, at *4.

Points I, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, and XVIII are denied.

### b. Irreparable Harm *Rounds* Factor (Point XX)

Missouri law clearly establishes that "being subject to an unconstitutional statute, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Rebman v. Parson*, 576 S.W.3d 605, 612 (Mo. banc 2019) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) ("Because the funding restrictions of HB2007 would result in his employment being unconstitutionally terminated, Rebman was subject to an unconstitutional statute and, therefore, irreparably injured."); *Planned Parenthood of Minnesota, Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 867 (8th Cir. 1977) ("Planned Parenthood's showing that the ordinance interfered with the exercise of its constitutional rights and the rights of its patients supports a finding of irreparable injury.").

Because the circuit court did not abuse its discretion in concluding that Planned Parenthood had *preliminarily* carried its burden relating to a likelihood of success on its underlying claims involving the Challenged Laws, it necessarily follows that the "irreparable harm" *Rounds* factor also favors Planned Parenthood's request for preliminary injunctive relief. The State acknowledges as much by stating in its appellate briefing to this Court: "[y]es, if a statute is unconstitutional, being subjected to that statute causes irreparable harm."

Instead, the State focuses its argument in this appeal on the "amount or degree" of harm, arguing that the harms flowing from denying access to abortion care in Missouri are merely "minor harms" that can be avoided by Missouri residents receiving, and

Planned Parenthood performing, abortions outside of the state of Missouri—in the states of Kansas or Illinois, for example.  This argument is disingenuous.

In essence, the State does not deny that Missouri citizens adopted Section 36 to the Missouri *Constitution* so that Missouri residents would not have to travel to a different state to receive abortion care; but, during the pendency of this litigation the State proposes that that is precisely what Missouri residents should be required to do, so that Missouri *statutes* prohibiting elective abortion care in Missouri will override the Missouri *Constitution* during the pendency of this litigation.  This argument lacks any precedential support.

As the circuit court discussed in its ruling below, the irreparable harm flowing from a denial of abortion care within the confines of the Missouri Constitution Article I, Section 36, are unique because an abortion decision by an expectant mother "simply cannot be postponed, or it will be made by default with far-reaching consequences." *Bellotti v. Baird*, 443 U.S. 622, 643 (1979).

The circuit court's determination that the "irreparable harm" *Rounds* factor weighed in favor of granting preliminary injunctive relief was not an abuse of discretion.

Point XX is denied.

### c.  Balance of Harms and Public Interest *Rounds* Factors (Point XIX)

"The balance-of-harms and public-interest factors 'merge when the Government'—or, in this case, a state official in his official capacity—'is the [nonmoving] party.'"  *Eggers v. Evnen*, 48 F.4th 561, 564-65 (8th Cir. 2022); *see also Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th

1011, 1018 (8th Cir. 2023) ("The third and fourth factors for a preliminary injunction—harm to the opposing party and the public interest—merge when the Government is the party opposing the preliminary injunction.").

A state generally has no interest in enforcing statutes that likely violate the Constitution. *See Dakotans for Health v. Noem*, 52 F.4th 381, 392 (8th Cir. 2022) ("While South Dakota has important interests in protecting the integrity of the ballot initiative process, it has no interest in enforcing overbroad restrictions that likely violate the Constitution."). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *D.M. by Bao Xiong v. Minnesota State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019) (alteration in original) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)).

Because the State of Missouri and state officials are parties against whom the preliminary injunction is sought, we analyze the "balance of harms" and "public interest" factors together.

Missouri voters approved Section 36 of the Missouri Constitution through the democratic process, demonstrating a clear intent to establish "a fundamental right to reproductive freedom" that "shall not [be] den[ied] or infringe[d]" by the Government. MO. CONST. art. I, § 36.2. It is in the public interest to prevent violation of those constitutional rights. And, again, we note that the State concedes that there is language in the Challenged Laws that does, in fact, violate Section 36 of the Missouri Constitution.

It was not an abuse of discretion for the circuit court to conclude that the "balance of harms" and "public interest" factors favor granting the preliminary injunction.

Point XIX is denied.

## Conclusion

We conclude that the circuit court did not abuse the discretion afforded the circuit court in issuing its preliminary injunctive relief ruling and, accordingly, we affirm the circuit court's preliminary injunctive relief ruling.[12]

_Mark D. Pfei_____
Mark D. Pfeiffer, Judge

Anthony Rex Gabbert, Chief Judge, and Alok Ahuja, Judge, concur.

---

[12] Planned Parenthood filed a motion to strike or, in the alternative, to not consider the State's Exhibit A, filed with this Court on August 21, 2025. Given our ruling today, we deny this motion as moot.